Mary Rose **WHEELOCK**, individually, as Administratrix of the Estate of David William Wheelock, as Guardian Ad Litem for Maggie Wheelock and David William Wheelock, minors, Plaintiff,

v.

**SPORT KITES, INC.**, a foreign corporation, dba Wills Wing, Rob Kells, an individual, Kualoa Ranch, Inc., a Hawaii corporation, and Sport Aviation Hawaii, Inc., a Hawaii corporation, Defendants.

Civ. No. 92–00768 HMF.

United States District Court,
D. Hawaii.

Dec. 1, 1993.

Jeffry R. Buchli, John S. Carroll, Carroll Smith & Buchli, Honolulu, HI, Thomas J. Kaster, Law Offices of Melvin M. Belli, San Francisco, CA, for Mary Rose Wheelock, Maggie Wheelock and minor David William Wheelock.

Leighton K. Oshima, Patrick I. Wong, Wong Oshima & Kondo, Honolulu, HI, for Sport Kites, Inc. and Rob Kells.

Sidney K. Ayabe, Rodney S. Nishida, Libkuman Ventura Ayabe Chong & Nishimoto, Honolulu, HI, for Kualoa Ranch, Inc.

Randolph R. Slaton, Law Offices of Randolph R. Slaton, Honolulu, HI, for Sport Aviation Hawaii, Inc.

## ORDER

FONG, District Judge.

### INTRODUCTION

This is a wrongful death action. On November 1, 1993, the court heard arguments on three motions: (1) defendant Kualoa Ranch, Inc.'s motion for summary judgment; (2) Kualoa Ranch's motion to dismiss for lack of diversity jurisdiction; and (3) plaintiff's motion to dismiss non-diverse parties to the complaint to preserve diversity jurisdiction.

### BACKGROUND

This action arises from the accidental death of David Wheelock ("David"). On July 14, 1991, David was paragliding at Kualoa Ranch. He was at a height of between 1,000 and 1,500 feet when the lines connecting him to the parachute-like canopy simultaneously broke, detaching him. He plunged to the earth and died.

Mary Rose Wheelock, David's wife, brought this action[1] against Kualoa Ranch, owner of the premises where the activity occurred, Sport Aviation Hawaii, provider of the equipment, and Sport Kites, Inc., dba Wills Wing, and Rob Kells, an individual, manufacturers of the equipment.

Kualoa Ranch filed a motion to dismiss plaintiff's complaint for lack of diversity jurisdiction. Plaintiff concedes that there is currently a lack of diversity: plaintiff is a citizen of California and defendant Sports Kites is a California corporation. On July 29, 1993, however, plaintiff reached a settlement agreement with Wills Wing and Rob Kells voluntarily dismissing all claims against them with prejudice. Plaintiff has thus filed a motion to dismiss Sport Kites, Inc., the sole non-diverse party to the complaint, to preserve diversity jurisdiction.

Kualoa Ranch has also filed a motion for summary judgment, joined by Sport Aviation Hawaii, on the grounds that plaintiff is barred from recovery because of an agreement and release of liability signed by David. On June 16, 1991, David signed the agreement as a precondition to use of the facilities and paragliding equipment. The agreement is a one-page, pre-printed, fill-in-the-blank form. Under its terms, David agreed to release and discharge Kualoa Ranch, Sport Aviation, and others from liability for injuries suffered while paragliding.[2]

---

1. Mrs. Wheelock brought the action individually, as administratrix of her husband's estate, and as guardian ad litem for their children.

2. The agreement, entitled an "Agreement and Release of Liability," provides, in relevant part, that:

 1. I hereby RELEASE AND DISCHARGE [defendants and others] ... from any and all liability, claims, demands or causes of action that I may have for injuries and damages arising out of my participation in Ultralight activities, including but not limited to, losses CAUSED BY THE NEGLIGENCE OF THE RELEASED PARTIES.
 2. I further agree that I WILL NOT SUE OR MAKE A CLAIM against the Released Parties for damages or other losses sustained as a result of my participation in Ultralight activities. I also agree to INDEMNIFY AND HOLD THE RELEASED PARTIES HARMLESS from all claims, judgments and costs, including attorney's fees, incurred in connection with any action brought as a result of my participation in Ultralight activities.

 3. I understand and acknowledge that Ultralight activities have inherent dangers that no amount of care, caution, instruction, or expertise can eliminate and I EXPRESSLY AND VOLUNTARILY ASSUME ALL RISK OF DEATH OR PERSONAL INJURY SUSTAINED WHILE PARTICIPATING IN ULTRALIGHT ACTIVITIES WHETHER OR NOT CAUSED BY THE NEGLIGENCE OF THE RELEASED PARTIES.

 5. I hereby expressly recognize that this Agreement & Release of Liability is a contract pursuant to which I have released any and all claims against the Released Parties....

 I HAVE READ THIS AGREEMENT & RELEASE OF LIABILITY, FULLY UNDERSTAND ITS CONTENTS AND MEANING, AND SIGN IT OF MY OWN FREE WILL. David signed and dated it at the bottom, and initialed at nine pre-printed blank spaces, including one at each paragraph.

## DISCUSSION

### I. KUALOA RANCH'S MOTION TO DISMISS COMPLAINT FOR LACK OF DIVERSITY JURISDICTION AND MARY ROSE WHEELOCK'S COUNTER–MOTION TO DISMISS NON–DIVERSE PARTIES.

The principal requirements of diversity jurisdiction are that the amount in controversy exceed $50,000 and that the parties be citizens of different states. 28 U.S.C. § 1332. There is no dispute as to the citizenship of the parties for purposes of diversity: plaintiff[3] and defendant Sport Kites, Inc. are citizens of California, and defendants Kualoa Ranch and Sport Aviation are citizens of Hawaii.

 The court will dismiss Sport Kites unless doing so will prejudice the remaining defendants. Rule 19 of the Federal Rules of Civil Procedure, which sets forth the rules for joinder of persons needed for a just adjudication, provides that in determining whether a party is indispensable, the court should consider "whether in equity and good conscience the action should proceed among the parties before it, or be dismissed." A dispensable non-diverse party may be dismissed to perfect retroactively the district court's original jurisdiction. *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1522–23 (9th Cir.1987); *Othman v. Globe Indem. Co.*, 759 F.2d 1458, 1463 (9th Cir.1985); *Inecon Agricorporation v. Tribal Farms, Inc.*, 656 F.2d 498, 500 (9th Cir.1981). Refusal by the court to dismiss a dispensable, non-diverse party may constitute an abuse of discretion. *Kerr v. Compagnie de Ultramar*, 250 F.2d 860, 864 (2d Cir.1958).

 Defendants claim that they will be prejudiced because Sports Kites, Inc. designed and manufactured the allegedly defective paraglider, and unless they remain as defendants, they will not be part of the special verdict form submitted to the jury, pursuant to Hawaii Revised Statutes § 663–11 *et seq.*, for determination of comparative fault. The court, however, may include a non-party on the special verdict form for apportionment of fault. *See, e.g., In re Hawaii Federal Asbestos Cases*, 960 F.2d 806 (9th Cir.1992) (where the jury attributed a percentage of fault to non-parties). The statute does not require that fault be apportioned only among parties to the lawsuit.

[6] Plaintiff has already settled with Rob Kells and Wills Wing, the parties destroying diversity, and will not be prejudiced by their dismissal. Defendants are not prejudiced because they may bring a third-party complaint against Sport Kites for indemnification, and their ability to defend plaintiff's suit is unimpaired. The greatest source of potential prejudice is to plaintiff if the court dismisses for lack of diversity jurisdiction because the statute of limitations has expired on her claims.

### II. KUALOA RANCH'S MOTION FOR SUMMARY JUDGMENT.

 Plaintiff in a wrongful death action is subject to defenses which could be asserted against the decedent. *See Saenz v. Whitewater Voyages, Inc.*, 226 Cal.App.3d 758, 763–64, 276 Cal.Rptr. 672 (Cal.App.1990); *Madison v. Superior Court*, 203 Cal.App.3d 589, 250 Cal.Rptr. 299 (Cal.App.1988). Defendants thus raise the defense which they would have had against David—his agreement. The agreement provided, *inter alia*, that David agreed to release and discharge defendants Kualoa Ranch, Sport Aviation, and others from any liability, including "losses caused by the negligence of the released parties." The issue before the court on the motion for summary judgment is whether to give effect to the release of liability signed by David (and initialed at each paragraph).

#### A. David Wheelock Expressly Assumed the Risk of Death.

Defendants contend that signing the agreement constituted an assumption of risk by David. If the agreement is valid, they argue, it operates to relieve them of any legal

---

**3.** The relevant citizenship of plaintiffs in a wrongful death action is that of the decedent. 28 U.S.C. § 1332(c)(2). It is undisputed that the domicile of David, the decedent, was in California.

duty to protect David from the injury-causing risk.

The agreement signed by David was a standardized, pre-printed form. It was an adhesion contract of the sort frequently offered to consumers of goods and services on a "take-it-or-leave-it" basis. In *Leong v. Kaiser Found. Hospitals*, 71 Haw. 240, 247–48, 788 P.2d 164 (1990), the Hawaii Supreme Court addressed the problem of such contracts:

> An adhesion contract is a form contract created by the stronger of the contracting parties. It is offered on a "take this or nothing" basis. Consequently, the terms of the contract are imposed on the weaker party who has no choice but to conform. These terms unexpectedly or unconscionably limit the obligations of the drafting party. Because of these circumstances, some courts look past the wording of the contract and consider the entire transaction in order to effectuate the reasonable expectations of the parties. Ambiguities in the contract will be construed against the drafters and in plaintiff's favor.

(citing *Robin v. Blue Cross Hosp. Serv., Inc.*, 637 S.W.2d 695, 697 (Mo.1982)).

■ While the agreement in the case at bar was an adhesion contract, it is not unconscionable. It is of a sort commonly used in recreational settings. *See, e.g., Saenz v. Whitewater Voyages, Inc.*, 226 Cal.App.3d 758, 276 Cal.Rptr. 672 (Cal.App.1990) (whitewater rafting); *Westlye v. Look Sports, Inc.*, 17 Cal.App.4th 1714, 22 Cal.Rptr.2d 781 (Cal. App.1993) (skiing). Such agreements are generally held to be valid. Adhesion contracts are fully enforceable provided that they are not unconscionable and do not fall outside the reasonable expectations of the weaker or adhering party. *See Graham v. Scissor–Tail, Inc.*, 28 Cal.3d 807, 820, 623 P.2d 165, 172–73, 171 Cal.Rptr. 604, 612 (1981).

In *Saenz*, 226 Cal.App.3d at 758, 276 Cal. Rptr. 672, the court barred recovery in a wrongful death action because plaintiff had signed a release expressly assuming the risk of the activity. Saenz had signed a "release and assumption of risk" agreement in order to participate in a three-day whitewater rafting trip on which he drowned. The court found that the release constituted an express assumption of risk and acted as a bar to a wrongful death action. *Id.* at 765, 276 Cal. Rptr. 672.

Plaintiff argues that *Saenz* is distinguishable in the extent of the decedent Saenz's knowledge of the assumed risk. He received extensive warning regarding the risk, extensive preparation, and several opportunities to avoid the particular rapids in which he drowned.[4] In contrast, David received some, less extensive explanation of the dangers of paragliding.[5] Although David did sign and initial the agreement providing that he assumed all risks, plaintiff argues that there is a question of fact as to David's state of mind and the parties' understanding.

■ Plaintiff also argues that *Saenz* is distinguishable in terms of the nature of the risk assumed. The *Saenz* court referred to the risk of drowning in treacherous rapids as "inherent in whitewater rafting and apparent to anyone." *Id.* at 766, 276 Cal.Rptr. 672. According to plaintiff, while injury or death caused by treacherous winds, improper landings, or collision with an obstacle are "apparent" risks, the risk which befell David—the simultaneous breaking of all lines connecting him to the parachute—was not apparent. The *Saenz* court held that defendant's assumption of all risks, known and unknown, made knowledge of the particular risk (death by drowning) unnecessary. *Id.* The court need not adopt so broad a holding. A risk must be a known risk for it to be properly assumed. Prosser & Keaton, *Torts*, § 68 at 480–81 (5th ed. 1984).

■ The court is satisfied that David knowingly assumed the risk at issue. The agreement provided that David "expressly

---

4. He was given several safety talks on emergency procedures, lessons, explanations of how to run the particular rapid, and a number of opportunities to opt out of riding the rapid in which he drowned. 276 Cal.Rptr. at 678.

5. William Fulton, president of defendant Sport Aviation, avers that he warned David and informed him of the dangers of paragliding before he signed the release.

and voluntarily assume[d] all risk of death or personal injury sustained while participating in ultralight activities whether or not caused by the negligence of the released parties." (capitalization omitted). The risk which befell David was the risk of death. David expressly assumed this risk. Plaintiff could characterize it in many different ways, but the fact is that David assumed the risk of death. Moreover, the apparent cause of David's fall and subsequent death—equipment failure—is an obvious risk in paragliding and other "air" sports.

### B. *The Agreement Does Not Affect Plaintiff's Gross Negligence and Strict Liability Claims.*

#### 1. *Plaintiff's Negligence Claims Are Barred.*

■ David's assumption of risk relieves defendants from any legal duty towards him, except insofar as the law nullifies such a waiver. Plaintiff is thus barred from bringing any negligence claims against defendants.

Hawaii courts permit a waiver of negligence claims. In *Krohnert v. Yacht Systems Hawaii, Inc.*, 4 Haw.App. 190, 198, 664 P.2d 738 (Haw.App.1983), the court declared that absent a public interest, "a party can contract to exempt himself for harm caused by his negligence." (citing Restatement (Second) of Contracts and Williston on Contracts). *Accord, Madison v. Superior Court*, 203 Cal.App.3d 589, 599, 250 Cal.Rptr. 299, 305 (Cal.App.1988). Although Hawaii courts have not specifically addressed the issue, courts in other jurisdictions have rejected the notion that the public interest is at stake in sport- or recreational-related waivers. *See Saenz, supra.* Plaintiff's claims under negligence theories are effectively barred, and defendants are entitled to summary judgment vis-a-vis these claims.

#### 2. *Plaintiff's Gross Negligence Claims Are Unaffected.*

■ Plaintiff alleges gross negligence on defendant's part in misrepresenting the safety of the paraglider. This is a distinct theory of liability from negligence. Negligence is the failure to use such care as a reasonably prudent and careful person would use under similar circumstances. Gross negligence, by contrast, is a failure to perform a manifest duty in reckless disregard of the consequences. "Gross negligence involves a risk substantially greater in amount than that which is necessary to make conduct negligent." *Bunting v. United States*, 884 F.2d 1143, 1147 (9th Cir.1989). The Restatement (Second) describes the difference between gross and ordinary negligence as follows: "[Gross negligence] differs from that form of negligence which consists of mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor to cope with a possible or probable future emergency." Restatement (Second) of Torts § 500 cmt. g (1965).

■ Hawaii courts have not addressed the issue of whether a party can contract away liability for his own gross negligence. Because this is a diversity action, the court applies the substantive law of the forum state, Hawaii, and uses its best judgment in predicting how the Hawaii Supreme Court would decide this issue. *See Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir.1980). In *Krohnert*, 4 Haw. App. at 198, 664 P.2d 738, the court enunciated the principle that a party can only contract away liability for negligence in the absence of a public interest. The public interest is at stake when a party attempts to contract to exempt himself for harm caused by his gross negligence. *See Stuart Rudnick, Inc. v. Jewelers Protection Servs., Ltd.*, 194 A.D.2d 317, 598 N.Y.S.2d 235, 236 (N.Y.App.Div.1993); *see also Saenz*, 226 Cal. App.3d at 765, 276 Cal.Rptr. 672 ("[e]verything short of gross negligence is covered by the release...."). The agreement in the instant case is therefore void against public policy to the extent that it attempts to relieve defendants of liability for their gross negligence.[6]

---

**6.** Alternatively, the court has grounds to find that the contract is ambiguous as to gross negligence. While the release and discharge agreement is a valid contract, it is an adhesion contract, and the court will interpret it accordingly. Adhesion contracts are construed liberally in favor of the adhering party and any ambiguities are resolved against the drafting party. *See State Farm Mut.*

### 3. Plaintiff's Strict Liability Claims.

The remaining question is whether the waiver of plaintiff's strict products liability claims is effective. This is also an issue of first impression in Hawaii. *See Takahashi v. Loomis Armored Car Serv.*, 625 F.2d at 316.

In *Madison*, 203 Cal.App.3d at 596, 250 Cal.Rptr. 299, the California court of appeals held that the waiver constituted a "complete defense" to any claims in plaintiff's actions. *Accord, Saenz*, 226 Cal.App.3d at 763, 276 Cal.Rptr. 672. Neither court addressed the issue of strict products liability claims. More recently, however, a California appellate court held that an agreement relieving a product supplier from strict products liability is void. In *Westlye v. Look Sports, Inc.*, 17 Cal.App.4th 1714, 22 Cal.Rptr.2d 781 (Cal. App.1993), the court held that a release agreement did not bar plaintiff who suffered skiing injuries from suing under a strict products liability theory in tort:

> there is a strong policy against allowing product suppliers to disclaim liability for injuries caused by defects in products they place on the market. To allow product suppliers to achieve this prohibited result merely by substituting assumption of risk language for disclaimer language would too easily allow circumvention of these policies. In effect, such an agreement is nothing more than a disclaimer.

*Id.* at 1747, 22 Cal.Rptr.2d 781.

The court rejected defendants' argument that the express assumption of risk was good against the whole world. *Id.* at 1716, 22 Cal.Rptr.2d 781 ("we have not discovered any authority for this proposition. The doctrine of express assumption is founded on express agreement.").

▉ *Westlye* is well reasoned and solidly grounded in relevant policy considerations. The essence of the doctrine of strict liability, as enunciated by Justice Traynor in *Escola v.*

*Coca Cola Bottling Co.*, 24 Cal.2d 453, 461, 150 P.2d 436 (1944) (Traynor, J., concurring), is that a manufacturer who places a product on the market should be absolutely liable if it knows that the product will be used without inspection and is shown to have an injury-causing defect. *See also Greenman v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 62, 377 P.2d 897 (1963) (applying the doctrine of strict liability as formulated by Traynor in *Escola*). The doctrine of strict liability is based not only on the public policy of discouraging the marketing and distribution of defective products, but also on the reasoning that a manufacturer is in a far better position than individual consumers to insure against the risk of injury and to distribute costs among consumers.

▉ The court sees no reason to permit defendants to insulate themselves from strict liability by means of a release when they could not do so otherwise. Insofar as the agreement signed by David attempts to relieve product suppliers of their responsibility for injuries caused by defective products, it is squarely at odds with the strict products liability doctrine. The very reason for the growth of products liability law was a perceived need to protect consumers from defective products and from attempts by product suppliers to disclaim responsibility for such defects by way of contractual provisions. *See Seely v. White Motor Co.*, 63 Cal.2d 9, 16–17, 403 P.2d 145, 45 Cal.Rptr. 17 (1965); *Vandermark v. Ford Motor Co.*, 61 Cal.2d 256, 391 P.2d 168, 37 Cal.Rptr. 896 (1964) ("[s]ince [the dealer] is strictly liable in tort, the fact that it restricted its contractual liability to [plaintiff] is immaterial."); *Greenman*, 59 Cal.2d at 57, 377 P.2d at 897. With respect to claims for strict liability, David's waiver is thus void as against public policy.

Hawaii courts have recognized that lessors of products who are in the business of leasing are subject to strict products liability. *Stew-*

*Auto. Ins. Co. v. Fermahin*, 73 Haw. 552, 556, 836 P.2d 1074 (1993) (interpreting an insurance contract) (citation omitted). The court applies this rule only if there is a true ambiguity, and not merely because the parties disagree over its interpretation. *Id.* at 556, 836 P.2d 1074. "Ambiguity exists 'only when the contract taken as a whole, is reasonably subject to differing interpre-

tation. A court must respect the plain terms of the policy and not create ambiguity where none exists.' " *Id.* at 556–57, 836 P.2d 1074 (citations omitted). The release agreement, however, addresses only negligence and not gross negligence. The court will construe this as not barring a claim in gross negligence.

art v. Budget Rent–A–Car Corp., 52 Haw. 71, 75, 470 P.2d 240 (1970). Accord, Price v. Shell Oil Co., 2 Cal.3d 245, 250, 466 P.2d 722, 725, 85 Cal.Rptr. 178, 181 (1970). Plaintiff's claims in strict liability against Kualoa Ranch and Sport Aviation are not precluded by the release agreement.

### C. The Agreement Is Not Ambiguous.

Plaintiff claims that the agreement is ambiguous because it includes the following paragraph:

> 6. It is understood that the purchase of this waiver does not constitute a contract of insurance but only a waiver of the contractual defenses that would otherwise be available to the Released Parties.

Plaintiff claims that this paragraph indicates that David was purchasing a waiver of the contractual defenses available to defendants, and that the agreement itself would constitute a defense which is being waived. She argues that it is thus ambiguous as to whether such defenses are being waived.

■ Plaintiff points out correctly that courts regard attempts to contract away tort liability with skepticism, Gardner v. Downtown Porsche Audi, 180 Cal.App.3d 713, 716, 225 Cal.Rptr. 757 (Cal.App.1986), and that an attempt to do so must be "clear, explicit, and comprehensible in each of its details." Ferrell v. Southern Nevada Off–Road Enthusiasts, Ltd., 147 Cal.App.3d 309, 319, 195 Cal. Rptr. 90 (Cal.App.1983). The court will resolve ambiguities in such contracts against the drafting party. See State Farm Mut. Auto. Ins. Co. v. Fermahin, 73 Haw. 552, 556, 836 P.2d 1074 (1992) (interpreting an insurance contract) (citation omitted).

■ Before an exculpatory clause may be enforced against a party, it must be established that he clearly and unequivocally agreed to the disclaimer with knowledge of its contents. Krohnert, 4 Haw.App. at 200, 664 P.2d at 744 (citations omitted). The court, however, only applies this rule in the event of a true ambiguity, and not merely because of a confusing passage. "Ambiguity exists 'only when the contract taken as a whole, is reasonably subject to differing interpretation. A court must respect the plain terms of the policy and not create ambiguity where none exists.'" Id. 73 Haw. at 556–57, 836 P.2d 1074 (citations omitted). In this case, the contract, taken as a whole is unambiguous.

### D. There Is No Genuine Issue of Material Fact as to Whether the Decedent Agreed to the Release with Knowledge of Its Contents.

■ Plaintiff contends that it is unclear whether David signed the agreement with clear and unequivocal knowledge of its terms. David is dead and thus unavailable to testify.

Defendants have come forward, however, with the affidavit of William Fulton, president of Sport Aviation, averring that he explained and warned David of the dangers at length before David signed the agreement. Moreover, there is no dispute that David signed the agreement and initialed it at the title and each paragraph. Plaintiff has not come forward with any evidence contradicting the Fulton affidavit and the signed agreement. There thus appears to be no genuine issue of material fact as to whether David signed the agreement with knowledge of its terms and of the dangers involved in paragliding.

### CONCLUSION

For the reasons given, the court GRANTS plaintiff's motion to dismiss non-diverse parties and DENIES defendants' motion to dismiss for lack of diversity jurisdiction. Plaintiff has already settled with Sport Kites, Inc., dba Wills Wing and Rob Kells, the non-diverse defendants, and Sport Kites is not indispensable within the meaning of Rule 19 of the Federal Rules of Civil Procedure.[7]

For the reasons given, the court GRANTS in part and DENIES in part defendants'

---

7. The court understands that the remaining defendants will seek to prosecute a third-party complaint against Sport Kites as designers and manufacturers of the equipment. In the event that a third-party complaint may not be prosecut-ed, Sport Kites may still be included as non-parties on the special jury forms for assessment of its share of liability under Hawaii's comparative negligence framework.

motion for summary judgment. The release and discharge agreement signed by David Wheelock is valid and enforceable, and a plain reading of the agreement indicates that David expressly assumed the risk of death—the risk which befell him—and waived his right to any negligence claims against defendant. Plaintiff's negligence claims are barred on this basis. The release and discharge is void, however, as it applies to plaintiff's claims for gross negligence and strict liability, because the assumption of risk is ineffective vis-a-vis these claims.

IT IS SO ORDERED.