In the Matter of PACIFIC
ADVENTURES, INC.

In the Matter of TROPICAL
HYDRO, INC.

Stacy COURTNEY, Limitation
Claimant/Third Party
Plaintiff,

v.

PACIFIC ADVENTURES, INC. and
Tropical Hydro, Inc., et al., Third
Party Defendants.

PACIFIC ADVENTURES, INC. and
Tropical Hydro, Inc., et al.,
Fourth Party Plaintiffs,

v.

Jeff JENSEN, Fourth Party Defendant.

No. CIV. 97–00216 ACK,
CIV. 97–00325 ACK.

United States District Court,
D. Hawaii.

March 26, 1998.

Julie H. China, Alcantara & Frame, Honolulu, HI, for Pacific Adventures, Inc., a/k/a Rainbow Chaser, O.N. 973629.

Michael Jay Green, David J. Gierlach, Robert E. Rapp, Honolulu, HI, for Stacy Courtney.

Michael Jay Green, David J. Gierlach, Honolulu, HI, for Jeff Jensen.

Roy Y. Yempuku, Yempuku & Kugisaki, Honolulu, HI, Steven D. Smelser, Law Offices of Matthew W. Monroe, Hermosa Beach, CA, David W. Proudfoot, SeaLaw Hawaii, Honolulu, HI, for Leslie Farnel.

Roy Y. Yempuku, Yempuku & Kugisaki, Honolulu, HI, Steven D. Smelser, Law Offices of Matthew W. Monroe, Hermosa Beach, CA, Paul H. Felser, Portman & Felser, Savannah, GA, for Tropical Hydro, Inc., as Owner of agent Kainalu, M/V, Kainalu, M/V, Dive Maui, Inc.

Roy Y. Yempuku, Yempuku & Kugisaki, Honolulu, HI, Matthew W. Monroe, Monroe & Shapiro LLP, Hermosa Beach, CA, Steven D. Smelser, Law Offices of Matthew W. Monroe, Hermosa Beach, CA, Paul H. Felser, Portman & Felser, Savannah, GA, for Dive Pacific Intern., Inc. d/b/a Offshore Adventures.

Deborah E. Barack, Carlsmith Ball Wichman Case & Ichiki, Honolulu, HI, for Brad K. Stafford, Individually, and as First Mate of Kai Nalu, Divemaster d/b/a Green Weaver Charters.

Brian M. Pearce, Carlsmith Ball Wichman Murray Case Mukai & Ichiki, Honolulu, HI, for Bradley K. Stafford.

### ORDER DENYING STAFFORD'S MOTION FOR SUMMARY JUDGMENT

KAY, Chief Judge.

### BACKGROUND

This action is based on an accident involving a scuba diver and a vessel at sea. On or about January 10, 1997, the "Kai Nalu," a vessel owned by Tropical Hydro, Inc. ("Tropical"), took Stacey Courtney and Jeff Jensen, her fiance and dive buddy, on a dive excursion to a dive spot near the Island of Lanai known as Shark Fin Rock. Leslie Farnel, the

sole owner of Tropical, served as captain aboard the "Kai Nalu." Bradley Stafford served as diving guide and deckhand.

On the same day, the vessel "Rainbow Chaser," owned by Pacific Adventures, Inc. ("Pacific"), took a group of people snorkeling at Shark Fin Rock. The "Kai Nalu" anchored near the vessel "Rainbow Chaser." As Courtney, Jensen, and Stafford were completing a dive, the "Rainbow Chaser" proceeded to leave the area. Courtney's leg became entangled in its starboard propeller. She suffered serious injuries to her leg including: extensive lacerations; severed arteries, veins, tendons and nerves; and numerous broken bones.

Pacific and Tropical filed these limitations actions, which have been consolidated. Courtney filed claims against Pacific and Tropical as well as third-party complaints against both companies, their vessels, various employees or agents, and Stafford. Pacific, Tropical, and Farnel filed fourth party complaints against Jensen. Jensen filed cross claims against, inter alia, Stafford.

On December 29, 1997, Stafford filed a motion for summary judgment based on a release form signed by Courtney and Jensen, ("the Release"), which purported to exempt Stafford from liability for injury "caused by negligence, gross negligence, or otherwise." Stafford Concise Statement in Support of Motion, Exh. D.

On February 25, 1998, Courtney and Jensen filed memoranda in opposition to Stafford's motion. On the same day, Pacific filed a memorandum in opposition to Stafford's motion. On February 26, 1998, Tropical filed a statement of no opposition to Stafford's motion, and, on March 5, 1998, Tropical filed a response to Courtney's and Pacific's memoranda. On the same day, Stafford filed a reply memorandum. The Court heard oral arguments on March 16, 1998.

### *SUMMARY JUDGMENT STANDARD*

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Celotex,* 477 U.S. at 322. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *T.W. Elec. Serv.,* 809 F.2d at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson,* 477 U.S. at 250–51.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United

States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Serv.,* 809 F.2d at 630–31.

## DISCUSSION

### A. Jurisdiction and Choice of Law

As a preliminary matter, the Court must determine jurisdiction and choice of law. Courtney alleges in her complaint both admiralty and diversity jurisdiction, while Jensen alleges only diversity jurisdiction.

On February 11, 1998, Magistrate Judge Kurren issued a Findings and Recommendation ("F & R") stating that, with respect to Courtney's claims, there was diversity of citizenship.[1] F & R at 16. Judge Kurren correctly observed that, when aligned by interest, Courtney, a California citizen, stood alone as claimant, and all other parties (excluding Jensen), who are not citizens of California, were properly aligned as third-party defendants. Judge Kurren further noted that Jensen, if included as a third-party defendant under Federal Rule of Civil Procedure 14(c), would defeat diversity because he is an indispensable party and would be aligned against Courtney, and he is a citizen of California. Judge Kurren concluded, however, that the complaints against Jensen failed to state a claim. Unless and until Tropical, Pacific, and Farnel amend their complaints against Jensen, there is diversity

of citizenship. However, the Court further notes that Courtney alleged an amount in controversy in excess of $50,000. In 1996, Congress raised the minimum amount necessary to establish diversity jurisdiction to $75,000. 28 U.S.C. § 1332. This change became effective before Courtney filed her complaint. Thus, Courtney's claims cannot rest on diversity jurisdiction.

Courtney also alleged admiralty jurisdiction. To determine whether there is admiralty jurisdiction under 28 U.S.C. § 1333, a court considers a two prong test:

> Under the first prong, a court must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. Under the second prong, two issues are raised: (1) whether the incident has a "potentially disruptive impact on maritime commerce" (viewing the "general features of the type of incident involved") and (2) whether the "general character" of the "activity giving rise to the incident" bears a "substantial relationship to traditional maritime activity."

*McClenahan v. Paradise Cruises, Ltd.,* 888 F.Supp. 120, 121 (D.Haw.1995) (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 532–34, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995)).

In his F & R, Judge Kurren observed that the parties do not dispute that the incident occurred in navigable water, and therefore the first prong is satisfied. F & R at 5. In addition, the parties do not dispute that there existed a potential for a disruptive impact on maritime commerce. *Id.* Lastly, Judge Kurren correctly concluded that, with respect to the limitation claims of Tropical and Pacific, there existed a substantial relationship to traditional maritime activities. *Id.* at 7–9. Judge Kurren reasoned that the underlying incident involved an accident with a moving vessel and that the claims against Tropical and Pacific involved allegations of negligent operation of their vessels, failure to

---

1. No party filed an objection to the F & R, and, at oral argument, all parties agreed that the F & R was correct.

respond adequately to an emergency at sea, and failure to properly render first aid. *Id.*

Like Tropical and Pacific's limitation claims, Courtney's claims against Stafford are subject to admiralty jurisdiction. There is a substantial relationship to traditional maritime activity "when at least one alleged tortfeasor was engaging in activity substantially related to traditional maritime activity and such activity is claimed to have been a proximate cause of the incident." *McClenahan v.* 888 F.Supp. at 122 (quoting *Grubart,* 115 S.Ct. at 1052). Because Tropical and Pacific were engaged in activity substantially related to traditional maritime activity and Courtney's claims against Stafford are based on the same incident in which Tropical and Pacific were allegedly involved, the substantial relationship test is satisfied.

Furthermore, Courtney's claims against Stafford establish independently a substantial relationship to traditional maritime activity. Courtney's complaint against Stafford includes allegations that Stafford negligently selected a location to anchor, failed to display a proper dive flag, failed to communicate with another vessel, failed to mark the anchor line properly, and failed to keep or use adequate emergency equipment. These allegations involve the operation of a vessel and the failure to administer first aid, activities that establish a substantial relationship with traditional maritime activity. *See In the Matter of the Complaint of Paradise Holdings, Inc.,* 795 F.2d 756, 760 (9th Cir.1986) (finding that a claim for negligent operation of a vessel when it collided with a bodysurfer established a substantial relationship with traditional maritime activity); *In the Matter of the Complaint of Kanoa, Inc.,* 872 F.Supp. 740, 745 & n3 (D.Haw.1994) (stating that admiralty jurisdiction governs an allegation that a crew failed to administer proper first aid). Thus, Courtney's claims are properly brought under admiralty jurisdiction, and admiralty law applies. *See Yamaha Motor Corp. U.S.A. v. Calhoun,* 516 U.S. 199, 206, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996)

(" 'With admiralty jurisdiction,' we have often said, 'comes the application of substantive admiralty law.' ") (citation omitted).[2]

Jensen, on the other hand, alleges only diversity jurisdiction. He properly alleged an amount in controversy in excess of $75,-000. As noted above, with respect to Tropical and Pacific's claims, there is no diversity of citizenship because Jensen, as a fourth-party defendant, is aligned against Courtney. Both Courtney and Jensen are citizens of California. With respect to Jensen's counter-claims, however, Jensen's interests are aligned with Courtney's. Jensen alleges that he paid medical bills relating to Courtney's injuries and therefore is entitled to relief under subrogation. Thus, with respect to these expenses, Jensen steps into the position of Courtney.[3] Accordingly, there is complete diversity with respect to Jensen's claims.

The Ninth Circuit has observed that, although a person may bring an admiralty claim in either diversity or admiralty jurisdiction, the same substantive law applies. *Ghotra by Ghotra v. Bandila Shipping, Inc.,* 113 F.3d 1050, 1054–55 (9th Cir.1997). The court further observed, "[O]f greatest significance is that there is no right to jury trial if general admiralty jurisdiction is invoked, while it is preserved for claims based in diversity or brought in state court." *Id.* at 1054. Thus, admiralty law applies to Jensen's claims as well.

**B. Prohibition of Release Clauses under Admiralty Law**

Stafford argues that he is entitled to summary judgment against Courtney because Courtney signed the Release. Admiralty law, however, prohibits such a release:

> It shall be unlawful for the manager, agent, master, or owner of any vessel transporting passengers between ports of the United States or between any such port and a foreign port to insert in any rule, regulation, contract, or agreement

---

**2.** The *Yamaha* Court further noted that state law may supplement admiralty law. 516 U.S. at 206–07.

**3.** Although Jensen has also stated claims for indemnity and contribution, Courtney, his fiance, has not filed a claim against Jensen, and therefore, Jensen's subrogation claims dominate, thereby aligning him with Courtney.

any provision or limitation (1) purporting, in the event of loss of life or bodily injury arising from the negligence or fault of such owner or his servants, to relieve such owner, master, or agent from liability, or from liability beyond any stipulated amount, for such loss or injury, or (2) purporting in such event to lessen, weaken, or avoid the right of any claimant to a trial by court of competent jurisdiction on the question of liability for such loss or injury, or the measure or damages therefor. All such provisions or limitations contained in any such rule, regulation, contract, or agreement are declared to be against public policy and shall be null and void and of no effect.

46 U.S.C.App. § 183c. Stafford argues that Section 183c does not apply for essentially two reasons: First, it is not meant to be applied in the context of a local, recreational scuba-diving trip, and, second, Stafford was not an agent of any vessel.

1. Application of Section 183c to Scuba Diving Voyages

■ Congress enacted Section 183c in 1936 in response to "the practice of providing on the reverse side of steamship tickets that in the event of damage or injury caused by the negligence or fault of the owner or his servants, the liability of the owner shall be limited to a stipulated amount." S.Rep. No.2061, 74th Cong., 2d Sess., 6 (1936); H.R.Rep. No. 2517, 74th Cong., 2d Sess., 6 (1936). Congress stated that Section 183c "will put a stop to all such practices and practices of like character." S.Rep. No.2061, 74th Cong., 2d Sess., 6 (1936); H.R.Rep. No. 2517, 74th Cong., 2d Sess., 6 (1936). Section 183c is not limited to common carriers but applies to "all vessels used on lakes or rivers or in inland navigation, including canal boats, barges, and lighters." 46 U.S.C.App. § 188.

Stafford correctly notes that no court has applied Section 183c to a release form relating to a scuba diving activity. Section 183c, however, has been applied when recreational activity is involved. In *Moore v. American Scantic Line, Inc.*, the plaintiff was injured

while participating in a rope-jumping contest on the deck of a ship. 121 F.2d 767, 767 (2d Cir.1941). The plaintiff filed suit against the defendant for negligently maintaining the deck. *Id.* Applying Section 183c, the court found that a provision on the ticket limiting liability for negligence was void. *Id.*

In *Carlisle v. Ulysses Line Ltd.*, plaintiffs were passengers on a cruise ship and were injured when, during a stop on land, they followed the advice of the ship's activities director and traveled into a dangerous area for sightseeing. 475 So.2d 248, 249 (Fla.App. 3rd Dist.1985). The court stated in dicta that Section 183c would invalidate any disclaimer of liability for negligence in such a case. *Id.*[4]

Tropical argues that Section 183c should not apply because Courtney and Jensen hired the "Kai Nalu" to transport them to and from the same port, and Section 183c applies to transportation between ports. Section 183c, however, is not so limited. The provision stating "between ports of the United States or between any such port and a foreign port" means that there must be a nexus between the voyage and the United States. The terms of 183c do not limit its application to voyages between different ports of the United States, and the Court finds no reason to impose such a distinction.

Tropical also argues that Section 183c does not apply because the carrier was acting outside the performance of its duty as a carrier. To support this proposition, Tropical cites *Chervy v. Peninsular and Oriental Steam Navigation Co.*, 243 F.Supp. 654 (S.D.Cal.1964), *aff'd*, 364 F.2d 908 (9th Cir. 1966). In *Chervy*, the court concluded that the injury occurred after the plaintiff's status as passengers had terminated. *Id.* at 654. The court observed, "After libelants had left the ship and removed their luggage[,] their rights to re-board the ship as passengers no longer existed. When they went aboard in the evening, they boarded not as passengers but as guests." *Id.* Thus, the *Chervy* court apparently found that Section 183c did not

**4.** In that case, the court observed that the disclaimer of liability in the contract of carriage purported to release the defendant only from

liability for the negligence of others. 475 So.2d at 249. Therefore, the court did not need to apply Section 183c.

apply when the ship did not transport the plaintiffs but merely entertained them while docked. Here, on the other hand, there is no dispute that the "Kai Nalu" not only transported Courtney and Jensen to the site of the accident but was to further return them to Maui.

Stafford additionally argues that Section 183c should not apply because the subject of the release was scuba diving, and there should be no difference between diving from shore and diving from a vessel. The precise injury in this case occurred from Courtney's contact with a moving vessel. In addition, her allegations include claims that Stafford negligently selected a location to anchor, failed to display a proper dive flag, failed to communicate with another vessel, failed to mark the anchor line properly, failed to keep or use adequate emergency equipment. Thus, Section 183c properly applies to this action.[5] Furthermore, the subject of the Release was not exclusively scuba diving. The Release provides that the consideration is permission "to board, reside on and participate in scuba diving and other activities arising from or in conjunction with 'Kai Nalu,'" and the Release purports to cover these activities and any activities incidental to these activities.

### 2. Stafford as Agent

Stafford also argues the Section 183c does not invalidate the release because it applies only to contracts with agents of owners of vessels, and he was not the agent of Tropical, Dive Maui, or Farnel.[6] The facts, however, do not establish this conclusion as a matter of law.

No case interprets agency under Section 183c. Courtney and Jensen argue that the court should apply the broad interpretation

of agency under the Jones Act, 46 U.S.C.App. § 688. *See Hopson v. Texaco, Inc.*, 383 U.S. 262, 263, 86 S.Ct. 765, 15 L.Ed.2d 740 (1966). This interpretation of agency is based on the standards of the Federal Employer's Liability Act, which is "a departure from common law ... [in recognition of] the cost of human injury, an inescapable expense of railroading, undertook to adjust that expense equitably between the worker and the carrier." *Id.* at 263–64 (internal quotation marks and citation omitted).[7]

By contrast, in *Dearborn v. Mar Ship Operations, Inc.*, 113 F.3d 995, 997 (9th Cir. 1997), the Ninth Circuit applied the common law definition of agency in a case under the Suits in Admiralty Act ("SIAA"), 46 U.S.C.App. § 745. The SIAA provides that the United States may be subject to "the same liability ... as is imposed by the admiralty law of the private shipowner." *Id.* at 996 (citation omitted).

Unlike the Jones Act, Section 183c does not seek to adjust equitably liability between employer and employee. Because the SIAA involves the same liability as that of a private shipowner, the Court finds that the *Dearborn* court's common law analysis rather than that of the Jones Act should apply to Section 183c.

▪ The Restatement of Agency defines an agency relationship as "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." Restatement (Second) of Agency § 1(1) (1958). Two characteristics must be present to establish agency: first, the principal must exercise significant control over the

---

**5.** If Courtney's injuries were related solely to scuba diving and had no relationship to the operation or maintenance of a vessel, then there would be no admiralty jurisdiction and Section 183c would not apply. *See In Matter of Complaint of Kanoa, Inc.*, 872 F.Supp. 740, 745 (D.Haw.1994) (finding no admiralty jurisdiction because any relationship between the accidental death and the boat's transporting of the decedent was "wholly fortuitous and unrelated to the tort itself").

**6.** Tropical owns the "Kai Nalu". Farnel is the sole stockholder of Tropical and Dive Maui. For purposes of the agency analysis, the Court will refer to Tropical, Dive Maui, and Farnel collectively as Farnel.

**7.** Under the Jones Act and FELA, there is an agency relationship when an "employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer." *Hopson*, 383 U.S. at 264.

agent's activities, and, second, the agent must be engaged in conducting the business of the principal. *Dearborn*, 113 F.3d at 997–98.

■ Stafford argues that he was a non-agent, independent contractor. To support this proposition, he cites *Servis v. Hiller Systems, Inc.*, 54 F.3d 203 (4th Cir.1995). In that case, the court observed:

> [A] non-agent independent contractor [is] "[a] person who contracts to accomplish something for another or to deliver something to another, but who is not acting as a fiduciary for the other." The term ... "is used colloquially to describe builders and others who have contracted to accomplish physical results not under the supervision of the one who has employed them to produce the results."

*Id.* at 208 (citing Restatement (Second) of Agency § 14N, cmt. b). In that case, the court found a non-agency, independent contractor relationship between a sub-contractor and the United States because the United States had not authorized the general contractor to delegate any of its management or operational responsibilities to a third party and thus the United States intended to enter into a fiduciary relationship only with the general contractor. *Id.* In that case, the subcontractor was retained to produce physical results, i.e., ship repair.

Stafford argues that he qualifies as a non-agent, independent contractor because Farnel engaged his services as a dive guide but did not have the right to control these services. The evidence shows, however, that Stafford served not only as a dive guide but also as a deckhand on the "Kai Nalu" in accordance with the Coast Guard's two crew-member requirement for the "Kai Nalu". *See* Pacific Statement of Facts, Exh. D. Stafford "in conjunction with Cpt. Leslie Farnel" selected the dive site. *See* Courtney Mem. Exh. 3 at 13. Stafford helped launch the "Kai Nalu" and set anchor prior to the dive. *See* Courtney Mem. Exh. 3 at 9. Stafford concedes that, in dropping and retrieving the anchor, Farnel had the right to control Stafford's conduct. *See* Courtney Mem. Exh. 3 at 17.

Thus, unlike the non-agent independent contractor described in *Servis*, Stafford's duties are not limited to providing a service to another without supervision. While part of his duties are unsupervised, i.e., the guidance of the scuba divers in the water, part of his duties are unquestionably supervised by Farnel. In both areas, Stafford dealt with the same clients. Furthermore, the accident in this case occurred at the point at which these two areas of responsibility meet: Courtney's allegations include negligent location of the dive, failure to adequately communicate with other vessels, and failure to keep or use adequate emergency equipment. These allegations arguably relate to Stafford's duties as deckhand, duties that were supervised by Farnel as captain of the vessel. At the hearing, Stafford conceded that he was an agent of Farnel while he acted as a deckhand.

The Court concludes that there are genuine issues of material fact regarding whether Farnel had sufficient control over Stafford's responsibilities to constitute an agency relationship. Accordingly the Court cannot find as a matter of law that the Release withstands the Section 183c prohibition.[8]

**C. Prohibition of Release Clauses under Hawaii Law**

■ Even if Section 183c did not apply and Hawaii law governed, the Release would be invalid under Hawaii Law. Hawaii law permits release from liability for ordinary

---

8. Courtney also argues that the Release is invalid because there was no consideration. This argument is incorrect. The signing of the Release was part of the same transaction as the payment for the trip, even though it was separated by one day. *See Hewitt v. Miller*, 11 Wash.App. 72, 521 P.2d 244, 248 n. 3 (1974) (concluding that the signing of a release after the plaintiff paid the fee for a diving class was "an integrated part of the whole transaction."). Furthermore, there is no evidence that Courtney and Jensen could not obtain a refund had they refused to sign the Release. *Cf. Corna v. American Hawaii Cruises, Inc.*, 794 F.Supp. 1005, 1011–12 (D.Haw.1992) (finding no consideration for a forum-selection clause on back of a cruise ticket because, when plaintiff received the ticket, plaintiff could not have returned it without paying a substantial penalty).

negligence, but "[t]he public interest is at stake when a party attempts to contract to exempt himself for harm caused by his gross negligence." *Wheelock v. Sport Kites, Inc.,* 839 F.Supp. 730, 736 (D.Haw.1993). Thus, an agreement is void that limits liability for gross negligence.

The Release in this case limits from liability injuries "caused by negligence or gross negligence or otherwise." Stafford Concise Statement in Support of Motion, Exh. F. The Release is clearly illegal with respect to gross negligence. Whether the Release is invalid in its entirety depends on whether it is severable. *See Ai v. Frank Huff Agency, Ltd.,* 61 Haw. 607, 619, 607 P.2d 1304 (1980) ("It is well settled under ordinary contract law, however, that a partially illegal contract may be upheld if the illegal portion is severable from the part which is legal.") (citation omitted).

In *Farina v. Mt. Bachelor, Inc.,* the Ninth Circuit addressed the severability of a similar release contract. 66 F.3d 233, 235 (9th Cir.1995). In that case, the release stated, "This release and indemnity agreement shall apply to claims based upon negligence and for any other theory of recovery." *Id.* at 234. The court found that under Oregon law, a release for liability for more than ordinary negligence violates public policy. *Id.* at 235. The court concluded that the entire release was invalid because the language of the release did not manifest an intention by the parties to sever the contract. *Id.* at 236. The court observed, "In one simple, broad sentence, [the defendant] sought to exculpate itself for any and all claims.... It is not our role to enforce only part of the release clause where it is not obvious from the language of the clause that the parties intended the clause to be severable." *Id.; but see Wheelock,* 839 F.Supp. at 736 (concluding without addressing the severability issue and in a case of first impression that a release is void only to the extent that it attempts to relieve the defendants of liability for their gross negligence).

Like the defendant in *Farina,* Stafford has attempted in one sentence to exempt himself from all claims against him. There is no manifestation of an intent to sever some claims from others. Thus, the Release is not severable and is therefore invalid in its entirety.

## CONCLUSION

For the foregoing reasons, the Court DENIES Stafford's motion for summary judgment.

IT IS SO ORDERED.