752 So.2d 69 (2000)
Carol H. BORDEN, as Personal Representative of the Estate of Kenneth Earl Borden, deceased, Appellant,
v.
Donna Lee PHILLIPS, individually and d/b/a Manta Ray Divers Co-op; Timothy Franklin Phillips, individually and d/b/a Manta Ray Divers Co-op; International Padi, Inc., on information and belief a California corporation doing business in Florida, Appellees.
No. 1D98-3361.
District Court of Appeal of Florida, First District.
February 16, 2000.
*71 Michael J. Pugh of Levin and Tannenbaum, P.A., Sarasota; and John T. O'Connell, Pro Hac Vice, of John T. O'Connell & Associates, P.C., Boston, Massachusetts, Attorneys for Appellant.
Mark A. Hruska, Boca Raton; and John Beranek of Ausley & McMullen, Tallahassee, Attorneys for Appellees.
BOOTH, J.
The personal representative of the estate of Kenneth Borden (the "decedent") appeals the trial court's Order Granting Final Summary Judgment in a wrongful death action brought against Appellees. We affirm.
The pertinent facts of this tragic accident, construed in a light most favorable to Appellant, are as follows. On April 1, 1995, decedent died while participating in a PADI Advanced Open Water course taught by Appellee Donna Phillips, approximately one mile offshore from Destin, Florida. Participants in the diving class were transported by a vessel known as the Manta Ray, owned and captained by Appellee Timothy Phillips. Both Donna Phillips and Timothy Phillips were doing business as "Manta Ray Divers Coop." Timothy Phillips was a PADI ("Professional Association of Diving Instructors") certified divemaster. International PADI, Inc. trained scuba diving instructors to certify scuba students, and had agreements with businesses such as the Manta Ray Divers Co-op to advertise and represent to the public that it was knowledgeable in scuba diving matters. Before the dive both Donna Phillips and Timothy Phillips briefed decedent that if he surfaced and needed assistance, he should wave to Captain Phillips. If he could not reach the boat, he should swim to and use the "tag line" (a rope tied to the vessel with a flotation ball on the end) to pull himself to the boat.
Before participating in this class, decedent executed a document entitled "PADI Standard Safe Diving Practices Statement of Understanding" and "LIABILITY RELEASE AND EXPRESS ASSUMPTION OF RISK" purporting to release Appellees from their own negligence.
During the dive, while in the water, decedent became separated from the Manta Ray, and he swam toward the boat's floating tag line. Captain Phillips saw decedent wave his hand, but interpreted the wave as an "OK" signal. Phillips detached the tag line from the Manta Ray. When decedent reached the tag line, he was unable to pull himself into the boat. When the Manta Ray reached decedent, he was found unresponsive, floating, with his hand wrapped in the tag line. An autopsy found the cause of death was drowning.
Appellant claimed 46 U.S.C.App. section 183c, a federal admiralty statute voiding certain releases between owners of vessels transporting passengers, applied to invalidate the release.[1] The trial court entered *72 Final Summary Judgment in favor of Appellees, finding that section 183c did not apply. The trial court also found the release was valid under Florida law. Appellant appeals these findings.
The threshold question concerning the validity of the release is whether admiralty law applies to the facts of this case. This is a question of law, and therefore we review the trial court's decision de novo. Menendez v. The Palms West Condominium Ass'n, Inc., 736 So.2d 58 (Fla. 1st DCA 1999).
State courts have concurrent jurisdiction with federal courts over admiralty cases under the savings to suitors clause. 28 U.S.C. § 1333(1). To establish admiralty jurisdiction, the court considers a two-prong test. First, the activity from which the claim arises must satisfy a location test, i.e., the tort must have occurred on navigable water or the injury suffered on land must have been caused by a vessel on navigable water; the second prong is whether the activity has a sufficient connection with maritime activity. This second prong requires an assessment whether, given the general features of the type of accident, the "incident has a potentially disruptive impact on maritime commerce" and whether the "general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 532-534, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995). In determining whether special admiralty rules apply, the court must inquire whether the defendant's activity on navigable waters is closely related to activity traditionally subject to admiralty law. Navigation of boats in navigable waters falls within this substantial relationship, as does the storing of boats at a marina. However, the relationship of activities such as swimming or flying an airplane over water is too attenuated. Id., 513 U.S. at 540, 115 S.Ct. at 1051.
The Manta Ray was a vessel transporting passengers for a scuba diving excursion in navigable waters, and therefore 46 U.S.C. section 183c applies to its voyage. See Keys Jet Ski v. Kays, 893 F.2d 1225 (11th Cir.1990)(pleasure craft such as jet skis are considered vessels under admiralty law); 1 U.S.C. § 3. The question arises, therefore, whether decedent's activity once he departed the Manta Ray for scuba diving falls within admiralty jurisdiction, thereby voiding the release.
No reported Florida cases have addressed this issue. The only published opinion we have found concerning the applicability of section 183c to scuba diving is In re Pacific Adventures, Inc., 5 F.Supp.2d 874 (D.Haw.1998). In Pacific Adventures, the plaintiff's leg became entangled with the propeller of a vessel while she was diving. The court held that admiralty law applied to the incident, and section 183c voided a release the plaintiff signed before the dive. The district court expressly stated that the plaintiff's injury arose from her "contact with a moving vessel." Id. at 880. However, had her injuries been "related solely to scuba diving and had no relationship to the operation or maintenance of a vessel, then there would be no admiralty jurisdiction and Section 183c would not apply." Id. n. 5 at 880 (citation omitted).
Whether the decedent's death was related to the operation or maintenance of the Manta Ray, or solely to scuba diving, is a close question. Unlike an incident in which a passenger falls overboard or suffers injuries from negligent maintenance, the decedent intentionally departed the Manta Ray to dive. This activity, scuba diving, was not dependent on his passage in the Manta Ray. Further, decedent ceased being a passenger when he entered the water. That the crew was allegedly *73 negligent when it failed to respond to decedent's signal did not involve the operation or maintenance of the Manta Ray, but was related solely to the activity of scuba diving, and therefore admiralty law does not apply to invalidate the release.
We are guided in this decision by the United States Supreme Court's rationale in Bisso v. Inland Waterways Corporation, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955). In Bisso, the Court addressed a towage contract exempting a towboat owner from its own negligence. Pointing to judicial history and public policy, the Court applied a longstanding general rule used by courts and legislatures to prevent enforcement of release-from-negligence contracts. "The two main reasons for the creation and application of the rule have been (1) to discourage negligence by making wrongdoers pay damages, and (2) to protect those in need of goods or services from being overreached by others who have power to drive hard bargains." Id., 349 U.S. at 91, 75 S.Ct. at 632-633. Here, Appellees were not overreaching; decedent voluntarily contracted with Appellees and boarded the Manta Ray to scuba dive, exposing himself to its associated risks. His death had no relationship to the operation or maintenance of the Manta Ray, and therefore 46 U.S.C.App. section 183c does not invalidate the release.[2]
Having found that the release is not voided by 46 U.S.C.App. section 183c, we now must examine whether the release validly released Appellees from liability for their own negligence under Florida law.
The language of the release is clear and unambiguous, reflecting the decedent's assumption of the risks inherent in scuba diving and his intent to release Appellees from all liability, including any liability resulting from their own negligence. Although viewed with disfavor under Florida law, such exculpatory clauses are valid and enforceable when clear and unequivocal. Theis v. J & J Racing Promotions, 571 So.2d 92, 94 (Fla. 2d DCA 1990), rev. denied, 581 So.2d 168 (Fla.1991). The release expressly states that the decedent "understands and agrees" that none of the "Released Parties" (Appellees) "may be held liable or responsible in any way for any injury, death, or other damages to me [decedent] or my family, heirs, or assigns that may occur as a result of my [decedent's] participation in this diving class or as the result of the negligence of any party, including the Released Parties, whether passive or active." The release goes on to state that the decedent intends to exempt and release Appellees from all liability or responsibility whatsoever ... "HOWEVER CAUSED, INCLUDING, BUT NOT LIMITED TO, THE NEGLIGENCE OF THE RELEASED PARTIES, WHETHER PASSIVE OR ACTIVE."
This case concerns contractual assumption of risks, not implied assumption of risks associated with some activities. Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977). The release is a classic example of the type of contractual release that has been upheld as enforceable in sporting events, such as automobile racing events and triathlons. Theis; DeBoer v. Florida Offroaders Driver's Ass'n, 622 So.2d 1134 (Fla. 5th DCA 1993); Banfield v. Louis, 589 So.2d 441 (Fla. 4th DCA 1991).
The release also releases Appellees from any "gross negligence" as alleged in the Amended Complaint. The term "negligence" as used in the release is not limited, and therefore should be construed as intending to encompass all forms of negligence, simple or gross, with only intentional torts being excluded from the exculpatory clause. Theis, 571 So.2d at 94.
We find that 46 U.S.C.App. section 183c does not invalidate the release. We further find that the exculpatory clause contained *74 in the release is valid under Florida law. We therefore AFFIRM the trial court's Order Granting Final Summary Judgment.
SMITH, LARRY G., Senior Judge, CONCURS.
BENTON, J., DISSENTS WITH WRITTEN OPINION.
BENTON, J., dissenting.
Like the majority opinion, I conclude that "[t]he Manta Ray was a vessel transporting passengers for a scuba diving excursion in navigable waters, and therefore 46 U.S.C.App. section 183c applies to its voyage." Ante at 72. It is immaterial under the view shared by the whole panel that the voyage ended where it began, see In re Pacific Adventures, Inc., 5 F.Supp.2d 874, 879 (D.Haw.1998), or thatfrom the passengers' perspective the voyage had a recreational rather than a commercial purpose. See Sinclair v. Soniform, Inc., 935 F.2d 599, 602 (3d Cir. 1991); see generally Keys Jet Ski, Inc. v. Kays, 893 F.2d 1225, 1228-29 (11th Cir. 1990). But see Shultz v. Florida Keys Dive Ctr., Case No. 97-10047 (S.D.Fla. Sept. 24, 1998) (Order Upon Defendants' Factual Stipulation), appeal filed, Case No. 98-5704 (11th Cir.1998).
As the majority opinion also states, "[w]hether the decedent's death was related to the operation or maintenance of the Manta Ray, or solely to scuba diving, is a close question." Ante at 72. But the question is one of fact, in my opinion, and therefore inappropriate for resolution on motion for summary judgment. See, e.g., Lindsey v. Bill Arflin Bonding Agency, Inc., 645 So.2d 565, 566 (Fla. 1st DCA 1994). Essentially, the complaint alleges that the decedent, while he was a passenger on the Manta Ray, entered the water with instructions to give a certain signal if he was in distress, that while he was on the water's surface he gave the signal, that the vessel did not come to his aid, and that he drowned as a result.
The facts alleged pertain to the operation of a boat. This is not a case in which a scuba diver died underwater, see In re Kanoa, Inc., 872 F.Supp. 740, 745 (D.Haw. 1994), or suffered the bends. See Thompson v. ITT Sheraton Corp., Case No. 97-10080 (S.D.Fla. Feb. 2, 1999) (Order on Motion for Summary Judgment), appeal filed, Case No. 99-11298 (11th Cir.1999). That the decedent had been scuba diving was, indeed, fortuitous, under the allegations of the complaint. As in Pacific Adventures, where the United States District Court of Hawaii concluded that 46 U.S.C.App. § 183c precluded enforcement of a release signed by a scuba diver, the complaint in the present case alleges that the crew of the dive boat failed to operate the dive boat properly. 5 F.Supp.2d at 880.
Although in the water, Mr. Borden was still attached to the boat as a passenger. Cf. Chervy v. Peninsular & Oriental Steam Navigation Co., 243 F.Supp. 654, 654-55 (S.D.Cal.1964), affirmed, 364 F.2d 908 (9th Cir.1966). The Manta Ray had not put Mr. Borden off at his ultimate destination. See Chervy, 243 F.Supp. at 654-55; Carlisle v. Ulysses Line Ltd., 475 So.2d 248, 249 (Fla. 3d DCA 1985). Boiled down, the question the complaint poses is whether the captain of the Manta Ray was negligent in failing to retrieve a passenger from the water more promptly. Because today's decision affirms taking this question from the jury, I respectfully dissent.
NOTES
[1] Subsection (a) of 46 U.S.C.App. § 183c states:

(a) Negligence
It shall be unlawful for the manager, agent, master, or owner of any vessel transporting passengers between ports of the United States or between any such port and a foreign port to insert in any rule, regulation, contract, or agreement any provision or limitation (1) purporting, in the event of loss of life or bodily injury arising from the negligence or fault of such owner or his servants, to relieve such owner, master, or agent from liability, or from liability beyond any stipulated amount, for such loss or injury, or (2) purporting in such event to lessen, weaken, or avoid the right of any claimant to a trial by court of competent jurisdiction on the question of liability for such loss or injury, or the measure or damages therefor. All such provisions or limitations contained in any such rule, regulation, contract, or agreement are declared to be against public policy and shall be null and void and of no effect.
[2] Moreover, as a matter of law section 183c cannot apply to Appellee PADI. The statute's potential reach is limited only to owners, managers, agents or masters of a vessel transporting passengers, not to a professional association certifying diving instructors.