5 P.3d 418

**Linda GUMP, Plaintiff–Appellee,**

v.

**WALMART STORES, INC., a Delaware corporation, Defendant–Appellant,**

and

**KBRL, Inc., a Hawaii corporation, John Does 1–10, Jane Does 1–10, Doe Corporations, Partnerships, Governmental Units or Other Entities 1–20, Defendants.**

No. 21670.

Intermediate Court of Appeals of Hawai'i.

Nov. 17, 1999.

Certiorari Granted Dec. 22, 1999.

Wayne S. Sakamoto (Gallagher & Sakamoto) on the opening brief and Howard F. McPheeters and David Y. Suzuki (Burke, Sakai, McPheeters, Iwanaga & Estes) on the reply brief, Honolulu, for defendant-appellant.

Robert D.S. Kim (Kim & Powell), on the briefs, for plaintiff-appellee.

BURNS, C.J., WATANABE, and LIM, JJ.

Opinion of the Court by LIM, J.

Defendant–Appellant Walmart Stores Inc. (Wal–Mart [1]) appeals the April 23, 1998 judgment of the Circuit Court of the Third Circuit adjudging it liable to Plaintiff–Appellee Linda Gump (Gump) for $25,175.00 in damages, $8,585.00 in attorneys' fees and $1,413.22 in costs, and to the state judiciary for $4,213.04 in jury costs; Wal–Mart also appeals appurtenant pretrial and post-trial orders.

We affirm.

## I. BACKGROUND

On February 15, 1996, Gump was leaving Wal–Mart's Kailua–Kona store when she slipped on a french fry, fell, and was injured. Gump suffered a bone fracture along the side of her right foot.

McDonald's, a franchise restaurant owned and operated by co-defendant KBRL, Inc. (McDonald's), is authorized by Wal–Mart to sell food and beverages on leased premises within the store. The McDonald's restaurant is located near the entrance and exit doors of the store, directly on "action alley." Action alley, the main thoroughfare through Wal–Mart, has the highest amount of customer traffic in the store.

Gump's accident happened on action alley, near the McDonald's restaurant.

Although there is no Wal–Mart policy prohibiting McDonald's patrons from taking food and beverage from the restaurant into the store, McDonald's placed a sign inside its restaurant, which read, "Patrons, please do not leave these premises with food."

On April 19, 1996, Gump filed a Complaint against Wal–Mart and McDonald's alleging negligence (Count I) and reckless conduct (Count II), and seeking damages, including punitive damages.

Wal–Mart and McDonald's answered, denying the material allegations and asserting various defenses, including comparative negligence.

The co-defendants did not exchange cross-claims.

On August 5, 1997, the court issued an Order Setting Trial Date and Pretrial Deadlines ("Pretrial Order"). The Pretrial Order provided, in part:

> Attendance at settlement conferences shall be as required by Rule 12.1, Rules of the Circuit Courts. The Court notes particularly Rule 12.1(a)(4) mandating the parties to have attempted to negotiate settlement through an exchange of written bona fide and reasonable offers of settlement prior to the conference. Attendance and authority are extremely important, therefore the parties or attorneys who have complete settlement authority (not authority to settle up to a certain amount) shall be present. Failure to comply with this shall result in the Court imposing appropriate sanctions. The court suffers great inconvenience when clients are not readily available.
>
> . . . .

---

1. Defendant–Appellant Walmart Stores Inc. is sometimes referred to in the record as "Wal-mart."

The sanctions for non-compliance with this order include those imposed by Rule 12.1(a)(6), and shall, in the appropriate case, include default.

Wal–Mart and McDonald's each filed a motion for summary judgment, on October 2, 1997 and October 6, 1997, respectively. The trial court heard both motions on November 6, 1997. The court denied both motions for summary judgment as to the negligence claim, but granted the motions as to the claim for punitive damages based on reckless conduct.

On November 10, 1997, a settlement conference was held, at which counsel for Wal–Mart advised the court that he had "zero settlement authority." The court sanctioned Wal–Mart $175, which represented one hour of attorneys' fees for opposing counsel, for settlement conference violation under Rule 12.1(a)(6) of the Rules of the Circuit Courts of the State of Hawai'i (HCCR), finding that:

> Counsel for [Wal–Mart] had no authority to settle this case and no other person appeared along with counsel for [Wal–Mart] with any settlement authority. This settlement conference was wholly non-productive.

On November 19, 1997, Wal–Mart filed two motions in limine: (1) Motion to Exclude Evidence of or Argument by Counsel of Security Videotape Cameras, and (2) Motion to Exclude Evidence of [four] Prior Accidents (which happened in or near action alley).

On November 21, 1997, Gump notified the court, through her Motion in Limine Regarding Dismissal of KBRL, Inc., that she and McDonald's had reached a settlement, and requested that McDonald's be dismissed from the case.

On November 25, 1997, the court heard argument on Gump's Motion in Limine Regarding Dismissal of KBRL, Inc. and took the matter under advisement. At the same hearing, the court heard argument on Wal–Mart's two pending motions in limine.

Gump and Wal–Mart agreed to exclude the security camera videotape. The court denied Wal–Mart's motion to exclude evidence of the previous accidents.

Trial commenced on November 25, 1997, and in the early morning session of the next day, the court granted Gump's motion to dismiss McDonald's and limited the introduction of evidence relating to McDonald's. Later that same morning, the presentation of evidence was concluded and the parties made their closing arguments. That afternoon, the jury returned its special verdict form, answering as follows:

> Question No. 1: Was [Wal–Mart] negligent?
>
> Yes.
>
> Question No. 2: Was the negligence of [Wal–Mart] a legal cause of (substantial factor in causing) the injury to [Gump]?
>
> Yes.
>
> Question No. 3: Was [Gump] negligent?
>
> Yes.
>
> Question No. 4: Was [Gump's] negligence a legal cause of (substantial factor in causing) the injury to [Gump]?
>
> Yes.
>
> Question No. 5: For each party for whom you found to be a legal cause of [Gump's] injuries, state the percentage fault attributable to each of those parties below:
>
> | [Gump]: | 5% |
> | [Wal–Mart]: | 95% |
>
> Question No. 6: What are [Gump's] total special and general damages:
>
> | Special Damages | $6,500.00 |
> | General Damages | $20,000.00 |

On January 20, 1998, Gump filed a motion, pursuant to Rule 26 of the Hawai'i Arbitration Rules (HAR), requesting sanctions against Wal–Mart for failing to prevail in the trial *de novo*. On February 18, 1998, after hearing argument on the motion, the court sanctioned Wal–Mart as follows:

> Attorney's fees and costs to be awarded against [Wal–Mart] in favor of [Gump].... [Reimbursement to the Judiciary] for the jury trial in the amount of $4,213.04, broken down as follows: $3,792.30 for the jury selection process as well as the jury fees.

The hotel bills for the jurors and lodging, food and lodging, $420.74, totaling $4,213.04.

In response to Wal–Mart's objection that "[n]o detailed list of charges has been provided and there is no indication by Plaintiff as to whether this 100 hours of [requested] time were reasonable," the court requested a breakdown of fees from Gump's attorney. The court set a 48–hour deadline for submission of an affidavit itemizing the attorneys' fees.

On February 20, 1998, within the 48–hour period set by the court, Gump filed its attorney's Declaration detailing 135.7 hours of work on the case, totaling $20,355.00 in legal services rendered to Gump. Thereupon, the court set reasonable attorneys' fees and costs at $8,585.00 and $1,413.22, respectively.

On April 29, 1998, Wal–Mart filed a Motion for Judgment Notwithstanding the Verdict or in the Alternative, Motion for New Trial. On June 1, 1998, the court heard argument and denied the motion.

On June 26, 1998, Wal–Mart filed a timely notice of appeal.

## II. ISSUES PRESENTED

Wal–Mart presents the following questions on appeal:

A. The trial court erred in denying Wal–Mart's Motion for Summary Judgment as to Gump's claim for negligence.

B. The trial court erred in dismissing McDonald's from the action, excluding evidence of McDonald's' negligence at trial, and failing to include McDonald's in the special verdict form for apportionment of liability.

C. The trial court erred in denying Wal–Mart's Motion In Limine to Exclude Evidence of Prior Accidents.

D. The trial court erred in awarding Gump sanctions against Wal–Mart pursuant to HAR Rule 26, for failing to prevail in the trial *de novo*.

E. The trial court erred in sanctioning Wal–Mart for settlement conference violations.

F. The trial court erred in denying Wal–Mart's Motion for Judgment Notwithstanding the Verdict or in the Alternative, Motion for New Trial, as the jury did not have any evidence from which it could find Wal–Mart negligent.

## III. STANDARDS OF REVIEW

### A. Denial of Motion for Summary Judgment.

■ Summary judgment is reviewed de novo under the same standard applied by the trial court. *McLellan v. Atchison Ins. Agency, Inc.*, 81 Hawai'i 62, 65, 912 P.2d 559, 562 (App.1996).

> Summary judgment is proper where, viewing all evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and that the moving party clearly demonstrates that he or she is entitled to judgment as a matter of law.

*Id.* at 66, 912 P.2d at 563. "A material fact is one which, if proved, 'would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Wilder v. Tanouye*, 7 Haw.App. 247, 254, 753 P.2d 816, 821 (1988) (quoting *Hulsman v. Hemmeter Dev. Corp.*, 65 Haw. 58, 61, 647 P.2d 713, 716 (1982)).

> Only when the moving party satisfies its initial burden of production does the burden shift to the non-moving party to respond ... and demonstrate specific facts as opposed to general allegations that present a genuine issue worthy of trial.

*GECC Financial Corp. v. Jaffarian*, 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App.1995).

### B. Gump's motion in limine regarding McDonald's.

■ Wal–Mart contends that the court erred, as a matter of law, in dismissing settling co-defendant McDonald's from the action, excluding evidence of McDonald's' negligence at trial, and preventing apportionment of McDonald's' fault in the special verdict form. Questions of law are reviewed by the appellate court under the right/wrong standard. *Mehau v. Reed*, 76 Hawai'i 101, 107, 869 P.2d 1320, 1326 (1994).

## C. *Admitting Evidence of Prior, Similar Incidents.*

A trial court's decision to admit evidence of previous, allegedly similar incidents is subject to the abuse of discretion standard of review. *Page v. Domino's Pizza, Inc.,* 80 Hawai'i 204, 206, 908 P.2d 552, 554 (App.1995). An abuse of discretion occurs where the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Sato v. Tawata,* 79 Hawai'i 14, 19, 897 P.2d 941, 946 (1995).

## D. *HAR 26 Sanctions.*

Where, as here, there is no dispute that a sanctioned party is a non-prevailing party for purposes of HAR Rule 26, the appellate court examines whether the trial court's decision to impose sanctions constituted an abuse of discretion. *Richardson v. Sport Shinko (Waikiki Corp.),* 76 Hawai'i 494, 511, 880 P.2d 169, 186 (1994).

## E. *Sanctions for Violation of HCCR 12.1.*

An award of sanctions under HCCR 12.1(a)(6) is reviewed under the abuse of discretion standard. *Canalez v. Bob's Appliance Service Center, Inc.,* 89 Hawai'i 292, 300, 972 P.2d 295, 303 (1999).

## F. *Denial of Motion for Judgment Notwithstanding the Verdict or Motion for New Trial.*

A trial court's denial of a motion for judgment notwithstanding the verdict is reviewed *de novo. Richardson,* 76 Hawai'i at 502, 880 P.2d at 177. " '[V]erdicts based on conflicting evidence will not be set aside where there is substantial evidence to support the jury's findings.' " *Id.* (quoting *Tsugawa v. Reinartz,* 56 Haw. 67, 71, 527 P.2d 1278, 1282 (1974)). " 'Substantial evidence' " is defined as " 'credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion.' " *Id.* (quoting *In re Doe, Born on January 5, 1976,* 76 Hawai'i 85, 93, 869 P.2d 1304, 1312 (1994) (citations omitted) (brackets in original) (footnote omitted)).

Denial of a motion for a new trial is reviewed under the abuse of discretion standard. *Richardson,* 76 Hawai'i at 503–04, 880 P.2d at 178–79.

## IV. *DISCUSSION*

### A.

The Hawai'i Supreme Court elucidated the material elements of a premises liability case in *Corbett v. Assn. Of Apt. Owners of Wailua Bayview Apts.,* 70 Haw. 415, 417, 772 P.2d 693, 695 (1989):

> In our view, the substance of our many cases, dealing with possessors of land, and their duty toward persons using the land, is that, if a condition exists upon the land which poses an unreasonable risk of harm to persons using the land, then the possessor of the land, if the possessor knows, or should have known of the unreasonable risk, owes a duty to the persons using the land to take reasonable steps to eliminate the unreasonable risk, or adequately to warn the users against it.

Thus, in a Hawai'i premises liability case, a defendant cannot be held responsible for its acts or omissions without notice or knowledge, or without reasonably being chargeable with knowledge. *See also* Donald M. Zupanec, Annotation, *Store or Business Premises Slip–and–Fall: Modern Status of Rules Requiring Showing of Notice of Proprietor of Transitory Condition Allegedly Causing Plaintiff's Fall,* 85 A.L.R.3d 1000, 1003 (1978) ("[N]egligence presupposes a duty of care, and this duty in turn presupposes knowledge or its equivalent.").

The plaintiff must establish that the defendant owner or occupant "knows or should have known of the hazard or defect which caused the injury. Liability cannot be imposed where a landlord or an owner or occupant of premises has not been put on actual or constructive notice of the unsafe condition or defect that causes plaintiff injury." *Harris v. State,* 1 Haw.App. 554, 557, 623 P.2d 446, 448 (1981).

Once on notice, the occupier of the land owes a duty to the persons using the

land to take reasonable steps to eliminate the unreasonable risk, or to adequately warn them against it. *Corbett,* 70 Haw. at 417, 772 P.2d at 695.

In considering the trial court's denial of Wal–Mart's motion for summary judgment on Gumps's negligence claim, we observe that Wal–Mart's appeal of the denial comes after plenary jury trial on the merits. At the outset, then, we consider whether the so-called "Morgan rule" precludes appellate review.

The eponymous *Morgan v. American Univ.,* 534 A.2d 323, 325–29 (D.C.App.1987), following a "majority of jurisdictions," *Id.* at 326, declined appellate review, after a trial on the merits, of a denial of summary judgment.

The *Morgan* court emphasized the incongruity in scrutinizing a pretrial decision made upon a less mature record than that which the trier of fact later considers and upon which it ultimately decides. It recognized and abjured the futility involved in considering whether to invalidate a later verdict reached after a full trial on the merits, in which evidence is more completely presented, cross-examination plays its part and witnesses can be seen and heard. "Summary judgment is not a substitute for trial; it exists as a mechanism to decide whether there exists any truly disputed material facts." *Id.* at 327.

Indeed, the Ninth Circuit Court of Appeals, following *Morgan,* has been more forthright: "Such a review is a pointless academic exercise." *Lum v. City & County of Honolulu,* 963 F.2d 1167, 1170 (9th Cir. 1992).

By 1995, a majority of the federal circuits followed the "Morgan rule." *Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.,* 51 F.3d 1229, 1234 (4th Cir.1995) (eight federal circuits apply the rule; the first, fifth, sixth, seventh, eighth, ninth, tenth and federal circuits, with the eleventh circuit following under certain circumstances). *See also Locricchio v. Legal Servs. Corp.,* 833 F.2d 1352, 1358 (9th Cir.1987) (the "majority rule").

Succinctly stated:

Reviewing a pretrial denial of summary judgment after a full trial is inappropriate because the denial was based on an undeveloped, incomplete record, which was superseded by evidence adduced at trial. Even when the pretrial record and the trial testimony are identical, a judgment after a full trial is superior to a pretrial decision because the factfinder's verdict depends on credibility assessments that a pretrial paper record simply cannot allow. *Chesapeake,* 51 F.3d at 1236.

The Hawai‘i Supreme Court has acknowledged, but not expressly adopted, the "Morgan rule." *Larsen v. Pacesetter Systems, Inc.,* 74 Haw. 1, 17–18, 837 P.2d 1273, 1282–83 (1992).

In *Larsen,* an appeal from a jury verdict, the supreme court, after discussing *Morgan,* reviewed a denial of summary judgment because the dispositive issue therein was one of law, not fact. In doing so, the supreme court relied upon a rule developed "[a]t an early stage in the development of the motion for summary judgment"; that a denial of summary judgment based on the presence of factual issues is not reviewable, while a denial based on questions of law is. *Id.*

While the dichotomy relied upon by the supreme court has been questioned, *see, e.g., Chesapeake,* 51 F.3d at 1235–36 (dichotomy unworkable, in practice, because of the difficulty in parsing questions of law from questions of fact, and in theory, because "all summary judgment decisions are legal decisions in that they do not rest on disputed facts"), we apply the dichotomy in this case.

The order denying Wal–Mart's motion for summary judgment as to the negligence claim is reticent as to the reasons underlying the trial court's decision. No findings of fact or conclusions of law were filed thereon, and none were required. Hawai‘i Rules of Civil Procedure (HRCP) Rule 52(a).

The transcript of the hearing on the motion provides, however, some inkling as to the basis of the court's denial. A perusal of the transcript reveals two possible, but mutually exclusive bases: (1) that what constitutes constructive notice of the specific instrumentality of the accident (the french fry, in this

case) is always a matter of fact for the jury, and (2) that what constitutes constructive notice is an issue involving Wal–Mart's general mode of operation, in and of itself and without primary reference to the specific instrumentality of the accident.

As to the first basis, the court queried:

Isn't that to be left to the fact finder if that's reasonable? What if your client noticed every hour of every day, would you say that we still had no notice because we inspected at the end of the day. Whether that's reasonable or not, shouldn't that be left to the fact finder?

As to the second basis, the court stated:

If the possessor should have known of the unreasonable risk ... and impose a duty to the person using the land to take reasonable steps to eliminate the unreasonable risks. The argument is if the person knows or should have known that food items would be taken out on the floor and shouldn't this be a factual question to determine whether the land owner, in this case McDonald's, took reasonable steps to eliminate this unreasonable risk?

Because the court denied summary judgment on the negligence claims based upon an issue or issues of law, distilled from the transcript and enumerated above, we are permitted, under *Larsen,* to review the denial.

### A–1.

■ In a motion for summary judgment, the movant has the burden of showing the absence of any issue of material fact. This is accomplished by showing that if the case went to trial, there would be no evidence to support the non-movant's position. *Wagatsuma v. Patch,* 10 Haw.App. 547, 561, 879 P.2d 572, 581–82 (1994).

■ In its motion for summary judgment, Wal–Mart argued that no liability could attach to it as occupant of the premises because Gump could produce no evidence that Wal–Mart had actual or constructive

notice[2] of the two-inch french fry on the floor.

In support of its motion, Wal–Mart attached selected pages from Gump's deposition transcript and selected pages from the deposition transcript of an eyewitness to the slip and fall. These exhibits included testimony from Gump and the eyewitness that neither knew how long the french fry was on the floor or how it got to be on the floor and that neither noticed any other foreign substance on the floor in the area of the fall.

Wal–Mart also attached the affidavit of an assistant manager at the store, which read:

1. Affiant is an assistant manager at the Kailua–Kona Wal–Mart, located at 75–1015 Henry Street, Kailua–Kona, Hawaii 96740 and makes this affidavit based on personal knowledge.

2. On February 15, 1996, Affiant was on duty at the Kailua–Kona Wal–Mart store.

3. As part of Affiant's responsibilities, as it is with all Wal–Mart associates, Affiant constantly patrols the store floor for hazards, including foreign substances on the floor.

4. On February 15, 1996, Affiant assisted [Gump] after she fell on the floor at the Kailua–Kona Wal–Mart.

5. Ten minutes prior to [Gump's] accident, Affiant was in the exact area where [Gump] fell. Affiant inspected the floors and did not notice or see any fallen french fries or any other hazards.

Based upon these exhibits, Wal–Mart argued that there could be no dispute as to the fact that it had no actual or constructive notice of the fallen french fry. This being so, Wal–Mart concluded that an essential element of Gump's claim could not be proven and therefore, summary judgment must enter in Wal–Mart's favor.

---

**2.** Constructive notice is a legal inference or presumption by which, for promotion of sound policy or purpose, the legal rights and interests of parties are treated as though they had actual notice or knowledge. *American Sec. Bank v. Read Realty, Inc.,* 1 Haw.App. 161, 164–65, 616 P.2d 237, 241 (1980).

In response, Gump attached to her memorandum in opposition pages she selected from the same two deposition transcripts. In addition, Gump attached an accident report form generally utilized by Wal–Mart, filled out immediately after the subject accident by the same assistant manager who submitted the affidavit in support of the motion.

According to Gump, the accident report lacked any mention of the assistant manager's inspection of the site ten minutes before the accident and thus, cast a shadow on her credibility. See *Costa v. Able Distributors, Inc.*, 3 Haw.App. 486, 489, 653 P.2d 101, 104 (1982) (party opposing summary judgment may not merely raise credibility as a genuine issue of material fact without some evidentiary matter in support).

Gump concluded that the credibility question created a factual dispute about the very occurrence of the assistant manager's inspection, which prevented Wal–Mart from proving, beyond any dispute of material fact, that it had no actual or constructive notice of the fallen french fry.

Neither party seriously asserted or argued, or asserts or argues on appeal, that Wal–Mart had actual notice of the specific instrumentality of the accident. The factual dispute as to notice boils down, therefore, to the issue of constructive notice.

Counterposed on summary judgment were Wal–Mart's proffer of the affidavit of its assistant manager, and Gump's proffer of the assistant manager's accident report form.

Though all of Wal–Mart's exhibits appear to be properly sworn to and authenticated, *Fuller v. Pacific Medical Collections, Inc.*, 78 Hawai'i 213, 223–25, 891 P.2d 300, 310–12 (App.1995), this does not appear to be the case with the accident report form proffered by Gump.

In support of its proffer, the declaration of Gump's attorney stated only that "Exhibit C is a true and correct copy of the incident report prepared by Ms. Eulee Steedly for [Wal–Mart] regarding [Gump's] injury on April 19, 1996."

▇▇▇ An affidavit of counsel swearing to the truth and accuracy of exhibits does not authenticate exhibits not sworn to or certified by the preparer or custodian of those exhibits. *Pioneer Mill Co., Ltd. v. Dow*, 90 Hawai'i 289, 297, 978 P.2d 727, 735 (1999). The accident report form was not, therefore, properly before the court on summary judgment. *Pioneer Mill*, 90 Hawai'i at 297, 978 P.2d at 735.

▇▇▇ Thus, on the dispositive issue of constructive notice, there was properly before the court only the undisputed facts that (1) no evidence was presented as to the length of time the french fry was on the floor, and (2) ten minutes before the accident, Wal–Mart's assistant manager inspected the area in question and noticed no fallen french fries or other hazards.

On appeal, Wal–Mart puts great emphasis upon this court's decision in *Harris, supra.*

In *Harris*, the plaintiff was injured in two falls on the premises of the Kaneohe State Hospital, where she was involuntarily committed for treatment of alcoholism. Plaintiff was first injured when she slipped on water on the floor near a water cooler. Several months later, plaintiff was injured when she tripped over a curb in a dimly-lit parking lot.

Wal–Mart seizes upon language in *Harris* noting the absence of evidence as to the length of time the water was on the floor near the water cooler, and a similar lacuna as to actual or constructive notice of burned-out lights in the parking lot. Because *Harris* affirmed the trial court's verdict in favor of the State, Wal–Mart argues for a similar result in this case.

Wal–Mart points to the lack of any evidence of actual or constructive notice of the french fry on the floor in this case. Wal–Mart emphasizes the lack of evidence of the length of time the french fry was on the floor before the accident, and brandishes the affirmative evidence of its assistant manager's uneventful inspection of the area ten minutes before the accident.

Wal–Mart ignores, however certain other factors articulated by this court in *Harris*.

With respect to the first injury, although the water cooler was located on State property, upkeep and mopping of the area was the responsibility of the residents. The State undertook maintenance and repair work only upon work order requests from the residents, and no such request had been submitted. *Harris,* 1 Haw.App. at 557–58, 623 P.2d at 448–49.

As to the second fall, there was no evidence that the lights were burned out, only that the parking lot was dimly lit and wet. Nor was there any evidence that the condition of the parking lot presented an unreasonable risk of harm. *Id.* at 558, 623 P.2d at 449.

It is within this wider context that we affirmed the trial court's verdict of no liability in *Harris.* It was under these circumstances that we announced that a landowner or occupant is not an insurer against *all* accidents. Such a blanket pronouncement is justifiable in a case like *Harris,* where the landowner or occupant did not have the responsibility to maintain the area. *Id.* at 557–58, 623 P.2d at 449.

In this case, Wal–Mart indubitably controlled and maintained the premises in question. It expects summary judgment on a sparse record consisting of (1) undisputed lack of actual notice of the french fry on the floor, (2) lack of evidence as to constructive notice, such as evidence showing the length of time the french fry was on the floor, and (3) its allegation that the assistant manager did an inspection of the area ten minutes before the accident and noticed nothing amiss.

When viewed in the context of the richly fact-laden inquiry—whether Wal–Mart knew or should have known of the unreasonable risk of harm—this seems to be a sparse record indeed upon which to short-circuit a plenary trial on the merits.

■ This stark contrast between record on summary judgment and record on trial underlies the "Morgan rule" discussed *supra.* It also actuates the general rule enunciated in Hawai'i that questions of negligence are ordinarily not susceptible. to summary judg-

ment. *Bidar v. AMFAC Inc.,* 66 Haw. 547, 553, 669 P.2d 154, 159 (1983).

■ Generally, whether there was failure on a defendant's part to exercise reasonable care is question of fact for the jury to decide. *Knodle v. Waikiki Gateway Hotel, Inc.,* 69 Haw. 376, 385, 742 P.2d 377, 383 (1987).

Some jurisdictions have held, as a matter of law, that evidence of the existence of a hazard for a certain brief enough period of time can negative any imputation of constructive notice of the hazard. *See, e.g., Miller v. Crown Mart, Inc.,* 162 Colo. 281, 285–87, 425 P.2d 690, 692–93 (1967) (where unpopped popcorn was on the floor for 3–4 minutes before the accident, no constructive knowledge could be imputed); *Publix Super Markets, Inc. v. Heiser,* 156 So.2d 540, 542 (Fla.Dist.Ct.App.1963) (where a broken mayonnaise jar was on the floor for only 1½ minutes before the accident, no constructive knowledge could be imputed); *Busler v. Cut Rate Super Market No. 1,* 47 Tenn.App. 21, 25–26, 334 S.W.2d 738, 740–41 (1960) (where a broken jar of preserves was on the floor for 4–5 minutes, no constructive knowledge could be imputed).

In this case, Wal–Mart contends that the maximum ten-minute duration of the hazard, when coupled with an acknowledged lack of evidence regarding the actual duration, is sufficient to negative constructive notice as a matter of law on summary judgment.

As noted, however, Hawai'i's appellate courts take a more cautious view on questions involving what is reasonable.

■ The Hawai'i Supreme Court has warned that "[t]he length of time it is necessary that such a defect exist in order for an inference of notice to arise is ordinarily a question for the jury." *Kellett v. City and County of Honolulu,* 35 Haw. 447, 457 (1940).

Following *Kellett,* this court has also assigned the determination of reasonable duration to the jury. *Hascup v. City & County of Honolulu,* 2 Haw.App. 639, 641, 638 P.2d 870, 873 (1982); *cf. Moody v. Cawdrey & Associates, Inc.,* 6 Haw.App. 355, 363, 721 P.2d 708, 714 (1986) ("Whether [the condominium association and its managing agent] had knowledge of criminal activities and therefore

whether the criminal attack on the [plaintiffs] was reasonably foreseeable by them are issues of material fact generally not subject to summary adjudication").

The trial court in this case was correct, therefore, in ruling that the determination of constructive notice is one for the jury and not for the court on summary judgment. We see no exceptionable difference vis-a-vis *Kellett* and *Hascup*, in the galaxy of circumstances in this case, to warrant a different conclusion.

### A–2.

■ We agree as well with the trial court that the required notice may stem, not from the specific instrumentality of the accident (the french fry), but from the general mode of operation of a business, if the specific hazardous instrumentality is a reasonably foreseeable consequence of that mode of operation.

Under this view of the elemental notice requirement, actual or constructive notice of the specific instrumentality is immaterial, and Wal–Mart's motion for summary judgment, pendent thereon, must fail.

In Hawai'i, published opinions addressing premises liability have, for the most part, addressed cases involving the State, a local municipality or, similarly, a condominium association, as defendants. *See, e.g., Kellett*, 35 Haw. 447 (1940); *Gibo v. City & County of Honolulu*, 51 Haw. 299, 459 P.2d 198 (1969); *Pickard v. City & County of Honolulu*, 51 Haw. 134, 452 P.2d 445 (1969); *Friedrich v. Dept. of Transportation*, 60 Haw. 32, 586 P.2d 1037 (1978); *Harris*, 1 Haw.App. 554, 623 P.2d 446 (1981); *Littleton v. State*, 66

Haw. 55, 656 P.2d 1336 (1982), *Hascup*, 2 Haw.App. 639, 638 P.2d 870 (1982); *Kaczmarczyk v. City & County of Honolulu*, 65 Haw. 612, 656 P.2d 89 (1982); *Corbett*, 70 Haw. 415, 772 P.2d 693 (1989).

■ Precedential Hawai'i premises liability cases involving business entities, specifically self-service department stores, and hazards on their premises created by their patrons, are rare to nonexistent. Whether a plaintiff must prove actual or constructive notice of the specific instrumentality of the accident, if it is subsumed within a generally hazardous condition reasonably foreseeable in the business proprietor's mode of operation, appears to be a case of first impression in Hawai'i.

This doctrine appears to have undergone, however, a substantial evolution in other jurisdictions, parallel to the evolution in business marketing techniques.

Recently, a number of courts [3] have eliminated the plaintiff's traditional burden to prove actual or constructive notice of the specific instrumentality of the accident, under the "mode-of-operation" exception.

The rule's applicability is limited. The business will be held liable only if the dangerous instrumentality is a reasonably foreseeable consequence of its mode of operation. *Jackson v. K–Mart*, 251 Kan. 700, 707, 840 P.2d 463, 468 (1992). If the instrumentality is not so comprehended, the traditional burden remains on the plaintiff. *Id.* at 710, 840 P.2d at 470.

In other words, where a plaintiff is able to demonstrate that the business proprietor adopted a marketing method or mode of

---

**3.** *Chiara v. Fry's Food Stores of Arizona, Inc.*, 152 Ariz. 398, 733 P.2d 283 (1987); *Tom v. S.S. Kresge Co., Inc.*, 130 Ariz. 30, 633 P.2d 439 (Ariz.Ct.App.1981); *Rhodes v. El Rancho Markets*, 4 Ariz.App. 183, 418 P.2d 613 (1966); *Smith v. Safeway Stores, Inc.*, 636 P.2d 1310 (Colo.Ct. App.1981); *Jasko v. F.W. Woolworth Co.*, 177 Colo. 418, 494 P.2d 839 (1972); *Jackson v. K–Mart Corp.*, 251 Kan. 700, 840 P.2d 463 (1992); *Elrod v. Walls, Inc.*, 205 Kan. 808, 473 P.2d 12 (1970); *Johnson v. Insurance Co. of North America*, 360 So.2d 818 (La.1978); *Gonzales v. Winn–Dixie Louisiana, Inc.*, 326 So.2d 486 (La.1976); *Sheil v. T.G. & Y. Stores Company*, 781 S.W.2d 778 (Mo.1989); *Wollerman v. Grand Union Stores, Inc.*, 47 N.J. 426, 221 A.2d 513 (1966);

*Bozza v. Vornado, Inc.*, 42 N.J. 355, 200 A.2d 777 (1964); *White v. Wynn*, 708 P.2d 1126 (Okla. 1985); *Cobb v. Skaggs Companies, Inc.*, 661 P.2d 73 (Okla.1983); *Lingerfelt v. Winn–Dixie Texas, Inc.*, 645 P.2d 485 (Okla.1982); *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex.1983); *Canfield v. Albertsons, Inc.*, 841 P.2d 1224 (Utah App.1992); *Forcier v. Grand Union Stores, Inc.*, 128 Vt. 389, 264 A.2d 796 (1970); *Pimentel v. Roundup Company*, 100 Wash.2d 39, 666 P.2d 888 (1983); *Carlyle v. Safeway Stores, Inc.*, 78 Wash.App. 272, 896 P.2d 750 (1995); *Ciminski v. Finn Corp., Inc.*, 13 Wash.App. 815, 537 P.2d 850 (1975); *Steinhorst v. H.C. Prange Co.*, 48 Wis.2d 679, 180 N.W.2d 525 (1970).

operation in which a dangerous condition is reasonably foreseeable and the proprietor fails to take reasonable action to discover and remove the dangerous condition, the injured party may recover without showing actual notice or constructive knowledge of the specific instrumentality of the accident. *Id.*

The mode-of-operation exception evolved from an already existing exception to the traditional notice requirement, involving dangerous instrumentalities created by the defendant or its agents:

> [W]here the transitory condition is one which is traceable to the proprietor's own act—that is, a condition created by the proprietor or under his [or her] authority—or is a condition in connection with which the proprietor is shown to have taken action, the proprietor is deemed to have actual notice of the condition and no proof of notice is necessary.

Zupanec, *supra* at 1005. *See, e.g., Tom v. S.S. Kresge Co., Inc.,* 130 Ariz. 30, 32, 633 P.2d 439, 441 (App.1981); *Jackson,* 251 Kan. at 704, 840 P.2d at 466 (where the instrumentality was not traceable to the proprietor or its agents, plaintiff's traditional burden applied, but "[t]here has been considerable latitude in the proximity said to be traceable."); *Falconer v. Safeway,* 49 Wash.2d 478, 480, 303 P.2d 294, 296 (1956).

This exception was applied in the slip-and-fall context in *Little v. Butner,* 186 Kan. 75, 348 P.2d 1022 (1960), in which the court held that the plaintiff's traditional burden to prove notice was eliminated where the proprietor created a dangerous condition by permitting a product representative to offer samples to customers:

> The defendants, by their arrangement or agreement to conduct the demonstration, created a condition ... whereby they knew or should have known that patrons, customers and children of tender years would drop particles of meat on the floor causing it to become slick and slippery and creating a dangerous condition in that area of the store where the demonstration was being conducted. These allegations ... clearly bring the instant case within the first class of cases making proof of notice unnecessary.

*Id.* at 82, 348 P.2d at 1029. *Cf. Schaap v. Publix Supermarkets, Inc.,* 579 So.2d 831, 834 (Fla.Dist.Ct.App.1991); *Long v. Smith Food King Store,* 531 P.2d 360, 362 (Utah 1973) (providing food samples is not inherently dangerous).

The original exception evolved along with the development of modern, self-service supermarkets, reaching supermarket slip-and-fall cases in which third parties, such as a proprietor's patrons, were responsible for the dangerous instrumentality.

In these cases, typically involving produce, the plaintiff did not need "to show ... notice where the circumstances are such as to create the reasonable probability that the specific transitory condition would occur, because under such circumstances there is a risk of harm that is or should be, reasonably foreseeable to the store owner or business proprietor." Zupanec, *supra* at 1004. *See, e.g., Rhodes v. El Rancho Markets,* 4 Ariz.App. 183, 418 P.2d 613 (1966); *Wollerman v. Grand Union Stores, Inc.,* 47 N.J. 426, 221 A.2d 513 (1966); *Ciminski v. Finn Corp.,* 13 Wash.App. 815, 537 P.2d 850 (1975).

The cases exemplifying this modern trend in the law cover foreseeable risk of harm in manifold aspects of a proprietor's mode of operation, including "the use of self-service marketing, ... and a pattern of conduct or recurring incidents." Zupanec, *supra* at 1004–05.

In the supermarket slip-and-fall cases, the exception has virtually swallowed the traditional rule, as the agency responsible for the dangerous condition may include, in addition to the proprietor or his agents, a third party such as a customer, or the proprietor's course of business conduct, if it involves a reasonably foreseeable risk that a dangerously slippery substance will end up on the floor:

> The self-service marketing method has achieved widespread acceptance within the relatively recent past in a variety of commercial enterprises, particularly supermarkets, discount department stores, and restaurants. While the self-service marketing method has economic advantages for the store owner or business proprietor and permits consumers the freedom to browse,

examine, and select the merchandise that they desire, certain problems are inherent in the method which are infrequently encountered under traditional merchandising methods that involve individual customer assistance. For example, customers are often not as careful in handling merchandise as are employees; merchandise may be spilled, dropped, and left on the floor as a result of customer carelessness, or because customer attention is directed toward displayed merchandise and the customer is unaware of the spilled or dropped merchandise; and spilled or dropped merchandise may not immediately come to the attention of employees whose job it is to clean the spills or return the merchandise to display shelves or racks.

It is suggested that by eliminating in certain self-service marketing situations the requirement that the plaintiff in slip-and-fall case prove that the store owner or business proprietor had actual or constructive knowledge of the transitory condition allegedly causing the plaintiff's fall, the courts are recognizing, either explicitly or implicitly, that by utilizing the self-service marketing method the store owner or business proprietor is himself [or herself] creating the dangerous condition, and that therefore the owner or proprietor is deemed to have actual notice of the condition, so that no proof of notice by the plaintiff is necessary.

Zupanec at 1004–05 n.15.

The mode-of-operation rule soon spread from the self-service food market context to slip-and-fall cases involving the so-called "big-box" retailers.

*Tom, supra,* represents an extension of the rule to self-service discount department stores, which often contain ready-to-eat food operations in their product mix. "[T]he 'mode-of-operation' rule provides a basis upon which a jury could infer negligence on the part of a proprietor, such as [Kresge], who sells soft drinks that patrons may carry around the premises while shopping." *Id.* at 33, 633 P.2d at 441.

In *Tom,* the plaintiff was injured when she slipped and fell on liquid on the floor of the dry goods area of the department store. The record yielded no information as to how the liquid was spilled or who spilled it, but it did show that soft drinks were sold from two counters in the store and consumption was not restricted to those areas. *Id.* at 31, 633 P.2d at 440. Spills were "easily foreseeable" because customers could carry the drinks throughout the store and enjoy them while shopping. *Id.* at 32, 633 P.2d at 442.

In *Jackson, supra,* the trial court's summary judgment in favor of K–Mart was reversed by the Supreme Court of Kansas, which followed *Tom* and adopted the mode-of-operation rule.

In *Jackson,* the plaintiff was injured when she slipped and fell on a green liquid in the children's clothing department. Suspicion fell on a small child passing through the department carrying a can of avocado juice. K–Mart allowed customers to take food and beverages purchased at its in-store cafeteria to other parts of the store. *Id.* at 704, 840 P.2d at 466.

Although K–Mart obtained summary judgment based on lack of the traditionally-required notice, the court noted that "the modern status of the traditional principle includes 'a broad trend toward liberalizing the rules restricting recovery by one injured on the premises of another.'" *Id.* at 706, 840 P.2d at 467 (quoting Zupanec at 1006).

Various justifications for the mode-of-operation rule have been advanced in jurisdictions adopting it.

One justification is that the evolution of marketing techniques requires a commensurate development in the rules of liability: "The predominant theme running through these cases appears to be that modern techniques of merchandising necessitate some modification of the traditional rules of liability." *Pimentel v. Roundup Co.,* 100 Wash.2d 39, 46, 666 P.2d 888, 892 (1983).

As the Pimentel court explained:

The basic notice requirement springs from the thought that a dangerous condition, when it occurs, is somewhat out of the ordinary .... In such a situation the storekeeper is allowed a reasonable time, under the circumstances, to discover and

correct the condition, unless it is the direct result of his (or his employees') acts. However, when the operating methods of a proprietor are such that dangerous conditions are continuous or easily foreseeable, the logical basis for the notice requirement dissolves. Then, actual or constructive notice of the specific condition need not be proved.

*Id.* at 47–48, 666 P.2d at 892.

Other courts emphasize the difficult burden placed upon a plaintiff in proving actual or constructive notice on the part of a proprietor on its own premises.

The notice requirement adds to the substantial hurdles faced by plaintiffs injured by transitory hazardous conditions in a store. *See, e.g., Gonzales v. Winn–Dixie Louisiana, Inc.,* 326 So.2d 486, 488 (La. 1976) (injured customer has an "onerous evidentiary burden"); *Wollerman v. Grand Union Stores, Inc.,* 47 N.J. 426, 430, 221 A.2d 513, 515 (1966) ("unjust to saddle the plaintiff with the burden of isolating the precise failure [which produced an injury]"). A person injured in a supermarket fall will rarely be able to trace the origins of the accident.

*Chiara v. Fry's Food Stores of Arizona, Inc.,* 152 Ariz. 398, 400, 733 P.2d 283, 285 (1987).

This "onerous burden" afflicts not only the plaintiff in these cases, but the defendant as well, as this case illustrates. In this case, the only affirmative evidence the parties together could muster of notice of the specific hazard is the affidavit of Wal–Mart's assistant manager, which was itself attacked by Gump as spurious. The affidavit, in any event, could only approximate the maximum duration of the hazard.

Some courts justify the rule by reasons more forthrightly economic. "The rationale for such a holding is explained by the Court of Appeals as being that 'a business that chooses to adopt the self-service merchandising technique which allows for lower overhead and greater profits, is in a better position to accept the risks involved.'" *Pimentel,* 100 Wash.2d at 45–46, 666 P.2d at 891. *See also Steinhorst v. H.C. Prange Co.,* 48 Wis.2d 679, 683, 180 N.W.2d 525, 527 (1970) ("In this age of super markets of

every description with their self-serve counters, the increase in accidents, like increased thefts, have come to be looked upon as a hazard of doing a self-serve business.").

We question whether there is any great need for justification, because we question whether the "mode-of-operation rule" is at all an innovation, rather than a simple, logical extension of the traditional rule of liability.

After all, a proprietor creating a mode of operation which involves reasonably foreseeable risks has itself created a dangerous condition, which implicates the traditional exception to the notice requirement covering acts of the proprietor or its agents. *Jackson,* 251 Kan. at 704–05, 840 P.2d at 466–67.

Further, the rule's ostensible departure from traditional principles may be more semantic than real. The Hawai'i Supreme Court's pronouncement of the traditional rule in *Corbett, supra,* spoke of notice of an "unreasonable risk," which can readily comprehend a quotidian mode of operation, as well as a transitory or extraordinary specific instrumentality of harm.

In any event, the approach we take today is really nothing radically new in the general scheme of tort liability:

We have recognized ... a businessman's duty to anticipate the hazardous acts of others likely to occur on his property, *e.g., Chernov v. St. Luke's Hosp. Medical Ctr.,* 123 Ariz. 521, 522–523, 601 P.2d 284, 285–286 (1979) (hospital not entitled to summary judgment when plaintiff alleged that accident in hospital parking lot was produced by hospital's improper maintenance of traffic control signals); *see also* Restatement (Second) of Torts § 344 ("A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons ..., and by the failure of the possessor to exercise reasonable care to [protect the public]").

*Jackson,* 251 Kan. at 709–10, 840 P.2d at 470.

Nor will it involve any real advantage or disadvantage to either party, other than the

elimination of a conceptually awkward and unrealistic element of proof which, as previously noted, impinges upon both plaintiff and defendant.

■ Under this approach, the plaintiff's burden to show notice will not be eliminated, only its focus will change, from the specific instrumentality of the accident to the proprietor's mode of operation. *Pimentel,* 100 Wash.2d at 49, 666 P.2d at 893.

■ The plaintiff must prove, in addition, that the proprietor's mode of operation was such that it was reasonably foreseeable that the dangerous instrumentality would occur. *Jackson,* 251 Kan. at 709, 840 P.2d at 469.

And the plaintiff must still prove that the defendant failed to take reasonable care to prevent injury. *See, e.g., Pimentel,* 100 Wash.2d at 49, 666 P.2d at 893.

■ Under the approach we take today, our pronouncement in *Harris* still holds true, that the proprietor is not the insurer of the premises and will not be held liable for every injury which arises out of the property. *Harris,* 1 Haw.App. at 557, 623 P.2d at 449.

> The mode-of-operation rule is of limited application because nearly every business enterprise produces some risk of customer interference. If the mode-of-operation rule applied whenever customer interference was conceivable, the rule would engulf the remainder of negligence law. A plaintiff could get to the jury in most cases simply by presenting proof that a store's customer could have conceivably produced the hazardous condition.

*Chiara,* 152 Ariz. at 400–01, 733 P.2d at 285–86; *see also Ingersoll v. DeBartolo, Inc.,* 123 Wash.2d 649, 869 P.2d 1014 (Wash.1994) (summary judgment against mall patron who suffered injuries as a result of a slip and fall affirmed because she failed to establish that mall's mode of operation created reasonably foreseeable unsafe condition).

Finally, it cannot be said that Wal–Mart will be ambushed by our holding on this issue, because Gump's negligence claim was actually pled on a mode-of-operation basis. The pertinent paragraphs of her Complaint read as follows:

7. Immediately adjacent to the entrance and exit way of the Walmart Store, Defendant KBRL, INC. maintains a McDonalds restaurant consisting of a counter and small eating area at which hamburgers, french fries and soft drinks are sold to the public and customers shopping in the Walmart Store.

. . . .

11. It is Defendants [Wal–Mart] and KBRL, INC.'s practice to allow customers to purchase, consume and transport food outside of the designated eating area of the McDonalds restaurant, including the entrance/exit way for the Walmart store.

12. Defendants [Wal–Mart] and KBRL, INC.'s practice, as described above, created the reasonable probability that pieces of food would drop onto the floor, thereby making it extremely slippery and creating a dangerous condition.

. . . .

17. Defendants [Wal–Mart] and KBRL, INC. owed Plaintiff a further duty not to create or to allow to exist a dangerous condition, or if such condition existed, to give notice or warning thereof to customers and potential customers in the Walmart store.

■ Therefore, under the mode-of-operation approach, it is clear in this case that the trial court's second basis for denying Wal–Mart summary judgment on the negligence claims was also correct, because Wal–Mart based its motion entirely on lack of notice of the specific instrumentality of harm, and not on lack of notice arising out of Wal–Mart's mode of operation, and thus based its motion on an immaterial inquiry.

### B.

Wal–Mart next contends that the trial court erred in (1) failing to include McDonald's on the special verdict form for apportionment of liability, (2) dismissing McDonald's from the action, and (3) excluding from the trial evidence of McDonald's negligence.

On all three points, Wal–Mart relies on its status as a joint tortfeasor with McDonald's.

In this case, both Wal–Mart, as the party in control of the premises in which the accident happened, and McDonald's, as the putative purveyor of the dangerous instrumentality, are alleged to be concurrently responsible for Gump's injuries.

Under the Uniform Contribution Among Tortfeasors Act (UCATA), "joint tortfeasors" is defined as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." Hawai'i Revised Statutes (HRS) § 663–11 (1993).

In this connection, "liable" means "subject to suit" or "liable in a court of law or equity." *Tamashiro v. De Gama*, 51 Haw. 74, 75, 450 P.2d 998, 1000 (1969).

Implicit in these definitions is the notion that party status is not a prerequisite to joint tortfeasor status.

Joint tortfeasors "are jointly and severally liable for the injury they caused to an injured party . . . and the injured party is entitled to collect his or her entire damages from *either tortfeasor*." *Karasawa v. TIG Ins. Co.*, 88 Hawai'i 77, 81, 961 P.2d 1171, 1175 (App.1998) (emphasis added).

Although the UCATA abrogates the common law rule that release of or recovery of judgment against one joint tortfeasor releases all, *Nobriga v. Raybestos–Manhattan, Inc.*, 67 Haw. 157, 163, 683 P.2d 389, 393 (1984); HRS § 663–13; HRS § 663–14, and thus preserves joint and several liability, the UCATA affords the joint tortfeasor some statutory protections.

The UCATA preserves a joint tortfeasor's right to contribution in a variety of contexts and situations, to the extent the joint tortfeasor's discharge of liability exceeds its pro rata share of liability. *See, generally,* HRS chapter 663.

Wal–Mart's arguments on this point of appeal depend upon the apportionment of liability necessary to prorate the joint and several liability preserved by the UCATA.

Wal–Mart's objection to McDonald's' dismissal from the action stems from its concern that the issue of apportionment of liability between it and McDonald's would be extinguished if McDonald's were no longer a party.

This concern was borne out when the trial court refused to include McDonald's on the special verdict form, for purposes of apportionment of liability, because of its dismissal from the action.

A further consequence was the trial court's refusal to allow evidence at trial regarding negligence on the part of McDonald's:

> [N]o mention of KBRL, Inc. [is to] be made. No mention. That's because they're not a party. It's like they never was [sic] brought into this case. They never participated at trial. And certainly, as far as KBRL, Inc. being a party initially, it will not be mentioned to the jury. However, whatever arguments can be made based on the evidence presented at trial, you may use that argument [sic].

Wal–Mart's basic grievance, therefore, is that the trial court denied it the opportunity to establish apportionment of liability, the basis for its right to contribution.

The defect in Wal–Mart's argument is, however, its apparent assumption that the right to contribution is self-actuating, or somehow the responsibility of the trial court. This assumption fails to recognize any need for a joint tortfeasor to assert its right to contribution.

A joint tortfeasor's right to contribution must be actively invoked by the joint tortfeasor. The last paragraph of HRS § 663–12 provides:

> When there is such a disproportion of fault among joint tortfeasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tortfeasors *shall be considered* in determining their pro rata shares, *subject to [HRS] section 663–17.*

(Emphasis added).

HRS § 663–17(c) provides, however, that "[a]s among joint tortfeasors who in a single

action are adjudged to be such, the last paragraph of [HRS] section 663–12 applies *only if the issue of proportionate fault is litigated between them by pleading in that action.*" (emphasis added).

HRS § 663–17(b) identifies the appropriate pleading: "A pleader may ... state as a cross-claim against a coparty any claim that the coparty is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant[ ] ..."

Clearly, Wal–Mart failed to invoke its statutory right to contribution under the UCATA.

For reasons not apparent in the record, Wal–Mart and McDonald's did not exchange crossclaims, even though crossclaims between and among co-defendants are so routine that they are virtual mantra in civil litigation. For this reason, we found their omission from this record remarkable.

Had Wal–Mart filed a crossclaim against McDonald's, its right to contribution from McDonald's would have been a cause of action to be litigated in this case. Unless and until it was determined, McDonald's could not be dismissed from the action.

At trial on such a crossclaim, evidence of McDonald's' negligence would surely have been relevant and admissible, and McDonald's would have been included on the special verdict form for apportionment of the liability attendant upon its negligence, if any.

If Wal–Mart had taken this simple expedient, it would have cured all of the injury complained of in this point of appeal. Wal–Mart simply failed to do so.

 Despite its failure to take advantage of the statutory and procedural guarantees of its right to contribution, Wal–Mart nevertheless contends the trial court had an independent obligation to insure that liability be apportioned between it and McDonald's, the settlement and dismissal of McDonald's notwithstanding.

 Case law in Hawai'i indicates, however, that whether the court takes such action is a decision within the discretion, not the obligation, of the court.

We agree with Wal–Mart that *Kaiu v. Raymark Industries, Inc.,* 960 F.2d 806 (9th Cir.1992), and *Wheelock v. Sport Kites, Inc.,* 839 F.Supp. 730 (D.Haw.1993), support its argument that nonparties *may* be included on special verdict forms.

*Kaiu* was not, however, a case in which a party simply failed to assert its right to contribution. The nonparty included on the verdict form was Johns–Manville Corporation (Johns–Manville), which was in bankruptcy the entire duration of the proceedings in the lower court, and the associated stay categorically prevented action against Johns–Manville for contribution. *Kaiu,* 960 F.2d at 819 n. 7.

Similarly, in *Wheelock,* the included nonparty was originally a party, but became a nonparty because the plaintiff would have lost diversity jurisdiction if she did not dismiss it from the action. *Wheelock,* 839 F.Supp. at 734.

The *Wheelock* court expressly acknowledged the discretionary nature of the decision whether to include nonparties on a special verdict form, stating "[t]he court, however, *may* include a nonparty on the special verdict form for apportionment of fault .... The statute does not require that fault be apportioned only among parties to the lawsuit." *Id.* (emphasis added).

Nothing in *Wheelock* or *Kaiu* implies, however, that such inclusion is mandatory.

Inclusion in both cases was approved because it precluded prejudice to otherwise vigilant parties. Certainly nothing in either case mandates inclusion simply because a party has failed to protect its rights, especially where, as here, such protection was available to it by simple expedient.

In this respect, we find no abuse in the court's exercise of its rightful discretion.

The same reasoning applies to Wal–Mart's contention that the trial court erred in dismissing McDonald's from the case.

The rule governing dismissal by the court provides:

> Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such

terms and conditions as the court deems proper.

HRCP Rule 41(a)(2).

■ By its terms, the rule affords the court discretion in deciding whether to dismiss a party from an action.

Similarly, under Rule 21 of the Federal Rules of Civil Procedure[4], the court has discretion in considering a motion to dismiss a party. Ordinarily, an exercise of such discretion can be reversed only when there has been clear abuse. *Weaver v. Marcus*, 165 F.2d 862, 864 (4th Cir.1948).

■ Wal–Mart did not file a crossclaim for contribution against McDonald's. A crossclaim would have kept McDonald's in the case, its settlement with Gump notwithstanding. *Land v. Highway Constr. Co.*, 64 Haw. 545, 548, 645 P.2d 295, 298 (1982). Wal–Mart's failure to utilize this simple protective pleading justifies, in our view, the court's exercise of its discretion in dismissing McDonald's from the action upon settlement with Gump.

In any event, since Wal–Mart argues that the court had an obligation to include McDonald's on the special verdict form and to admit evidence of its negligence at trial, regardless of its party or non-party status, we question why Wal–Mart need object at all to McDonald's' dismissal from the action.

■ Wal–Mart's last complaint in this part of its appeal is that the court erroneously excluded evidence of McDonald's' negligence at trial. Yet its reliance upon *Espaniola v. Cawdrey Mars Joint Venture*, 68 Haw. 171, 707 P.2d 365 (1985) is misplaced.

In *Espaniola*, a workers' compensation case, the Hawai'i Supreme Court held that evidence of an immune, nonparty employer's negligence may be admissible in an action brought by the employee against a third-party joint tortfeasor. The basis for the supreme court's holding was twofold.

First, the supreme court sought to avoid multiplicity of suits. If such evidence is inadmissible in the employee's suit for dam-

ages, then a later lawsuit would be necessary if the third-party wished to bring an allowed claim for indemnity against the employer. Admitting the evidence on a third-party complaint brought by the joint tortfeasor against the employer for indemnity would obviate the need for the subsequent lawsuit. *Id.* at 180–81, 707 P.2d at 371–72.

Second, the supreme court recognized possible prejudice to the plaintiff inherent in the exclusion of such evidence. Since Hawai'i's comparative negligence scheme allows plaintiff recovery only if contributory negligence is no greater than the aggregate negligence of tortfeasors, exclusion of evidence as to the negligence of a nonparty tortfeasor increases the chance that the plaintiff's contributory negligence will be found to outweigh that of the party tortfeasor(s). *Id.* at 181–83, 707 P.2d at 372–73.

Thus Wal–Mart finds no oasis in *Espaniola*.

The first justification in *Espaniola* does not apply in this case, because Wal–Mart filed no crossclaim against McDonald's and thus asserted no cause of action of any kind against its co-party. It chose not to take the route of judicial efficiency and economy and cannot now cloak itself in that standard. The second justification also is not Wal–Mart's to claim. Simply put, Wal–Mart is not the plaintiff in this case.

In formulating its holding in *Espaniola*, which overruled its decision in *Sugue v. F.L. Smithe Mach. Co., Inc.*, 56 Haw. 598, 546 P.2d 527 (1976), the supreme court relied heavily upon a commentary, Richard S. Miller, *Filling the "Empty Chair": Some Thoughts About Sugue*, 15 Haw. B.J. 69, 70 (1980). In addressing Wal–Mart's reliance upon *Espaniola*, it may be worth noting that commentator's observation:

> It is one thing to say that evidence of the fault of an absent non-party may not be admitted *to diminish the plaintiff's recovery*. Based on well-accepted principles of joint and several liability, the language of our Comparative Negligence Act, and a

---

4. Federal Rules of Civil Procedure Rule 21 provides, in pertinent part: "Parties may be dropped or added by order of the court on mo- tion of any party or of its own initiative at any stage of the action and on such terms as are just."

respectable view of the effect of an employer's causal fault on the employee's right to recover from a third-party, to hold that the party defendant cannot use the causal fault of an absent non-party to diminish his own liability to plaintiff is unexceptionable.

*Id.* at 70.

In conclusion on this point of appeal, Wal–Mart's failure to file a crossclaim against McDonald's and thus assert and protect its right to contribution obliges it to suffer the ills incident thereto.

### C.

▇ Wal–Mart further contends that the trial court erred in denying its Motion In Limine to Exclude Evidence of Prior Accidents because none of the previous accidents was substantially similar to the one in this case, such that Wal–Mart should have been alerted to the dangerous condition.

For this proposition, Wal–Mart relies on *Warshaw v. Rockresorts, Inc.,* 57 Haw. 645, 652, 562 P.2d 428, 434 (1977) ("it must first be shown ... that the conditions under which the alleged previous accidents occurred were the same or substantially similar to the one in question.").

The Hawai'i Supreme Court's holding in *Warshaw* dealt, however, with evidence of previous accidents offered to show that the product involved was dangerously defective. *See also American Broadcasting v. Kenai Air of Hawaii, Inc.,* 67 Haw. 219, 226, 686 P.2d 1, 6 (1984) (applying the same standard in a case involving an alleged dangerously defective product).

▇ Wal–Mart does acknowledge that if evidence of previous accidents is offered to prove *notice* of a dangerous condition, the requirement of similarity of conditions is much relaxed. *Warshaw,* 57 Haw. at 652, 562 P.2d at 434.

Wal–Mart nevertheless argues, on the strength of holdings in other states, that if the dangerous condition is a transitory one, evidence of previous accidents is always inadmissible because a defendant cannot be held to notice of things of such short duration.

*Eldorado Club v. Graff,* 78 Nev. 507, 511, 377 P.2d 174, 176 (1962); *Southern Pacific Co. v. Barnes,* 3 Ariz.App. 483, 415 P.2d 579 (1966).

In applying these principles to this case, Wal–Mart misapprehends, however, the pertinent issue.

In light of our holding approving the method-of-operation rule, *supra,* section III, A–2, the pertinent issue is not notice of the specific dangerous instrumentality (the french fry), but whether the proprietor's mode of operation posed an unreasonable risk of harm.

In denying Wal–Mart's Motion to Exclude Evidence of Prior Accidents, the court ruled that Gump could proffer evidence of four previous accidents. At trial, however, Gump offered evidence of only one of the accidents. In that incident, directly outside of McDonald's, two customers slipped on water which leaked from a bag of aquarium fish in a shopping cart.

Given the pertinent issue in this case, the similarity requirement simply does not apply.

A mode of operation that poses an unreasonable risk of harm manifests the risk in manifold specific ways, which are limited in their nature only by virtue of each being a reasonably foreseeable risk of the mode of operation.

Granted, the previous incident admitted into evidence was somewhat different in nature from the incident at issue in this case, but Wal–Mart's self-service operation exposed it to the risk that its patrons might be careless in handling the products they purchased, or that its own employees might be less than punctilious in safely packaging them. And thus the situations involving that risk were potentially many and multifarious.

From this perspective, the issue is not similarity, but foreseeable risk of harm.

The previous incident was admissible for the purpose of establishing the threshold fact that Wal–Mart's mode of operation posed an unreasonable risk of harm. *Ciminski,* 13 Wash.App. at 822, 537 P.2d at 855 (recurring incidents may show that a pattern of conduct, such as self-service, poses unreasonable risk of harm). *Cf. Jasko v. F.W. Woolworth Co.,* 177 Colo. 418, 420, 494 P.2d 839, 840 (a

pattern of remedial action may demonstrate a dangerous mode of operation); *Cobb v. Skaggs Companies, Inc.,* 661 P.2d 73,76 (Okla.Ct.App.1983) (implying that self-service marketing methods create a per se dangerous condition).

And because the issue is Wal–Mart's established mode of operation, and not a transitory condition, Wal–Mart's secondary argument that it is unreasonable to hold a defendant to notice of a transitory condition must fail as well.

■ Though the trial court couched its ruling on this issue in terms of notice of the specific dangerous instrumentality, under *Reyes v. Kuboyama,* 76 Hawai'i 137, 140, 870 P.2d 1281, 1284 (1994), we will not disturb the circuit court's decision if it is correct, the grounds that it gave for its ruling notwithstanding.

### D.

Having failed to improve on the arbitration award by the percentage required under HAR Rule 25 [5], Wal–Mart concedes it is the non-prevailing party subject to sanctions under HAR Rule 26,[6] but complains that the amount of sanctions awarded against it was clearly unjustified and unsubstantiated.

■ "When considering rules promulgated by courts, principles of statutory con-

struction apply .... Statutory provisions must be read in the context of the entire statute and interpreted in a manner consistent with the purposes of the statute." *Keaulii v. Simpson,* 74 Haw. 417, 421, 847 P.2d 663, 666 (1993).

As allowed under Rule 26, the trial court imposed reasonable costs and fees (other than attorneys' fees) actually incurred by Gump but not otherwise taxable under the law, costs of jurors, and attorneys' fees in an amount not more than $15,000. HAR Rule 26(B).

At the outset, Wal–Mart argues that its decision to appeal the arbitration award in this case was not unreasonable under the circumstances because "Wal–Mart clearly had a meritorious defense to this action."

■ This argument is simply the converse of the argument of the appellant in *Richardson;* that sanctions are only appropriate if pursuit of the trial *de novo* was frivolous. That standard was rejected by the *Richardson* court, which held that on review, the only relevant inquiries in reviewing a circuit court's decision to impose Rule 26 sanctions are: "(1) whether the party against whom the sanctions were imposed is a 'non-prevailing party' in the trial *de novo* and (2) whether the decision to impose sanctions constituted an abuse of discretion." *Richardson,* 76 Hawai'i at 511, 880 P.2d at 186.

**5.** Rule 25. The prevailing party in the trial de novo; costs.

 (A) The "Prevailing Party" in a trial de novo is the party who (1) appealed and improved upon the arbitration award by 30% or more, or (2) did not appeal and the appealing party failed to improve upon the arbitration award by 30% or more. For the purpose of this rule, "improve" or "improved" means to increase the award for a plaintiff or to decrease the award for the defendant.

 (B) The "Prevailing Party" under these rules, as defined above, is deemed the prevailing party under any statute or rule of court. As such, the prevailing party is entitled to costs of trial and all other remedies as provided by law, unless the Court otherwise directs.

**6.** Rule 26. Sanctions for failing to prevail in the trial de novo.

 (A) After the verdict is received and filed, or the court's decision rendered in a trial de novo, the trial court may, in its discretion, impose

sanctions, as set forth below, against the non-prevailing party whose appeal resulted in the trial de novo.

 (B) The sanctions available to the court are as follows:

 (1) Reasonable costs and fees (other than attorneys' fees) actually incurred by the party but not otherwise taxable under the law, including, but not limited to, expert witness fees, travel costs, and deposition costs;

 (2) Costs of jurors;

 (3) Attorneys' fees not to exceed $15,000;

 (C) Sanctions imposed against a plaintiff will be deducted from any judgment rendered at trial. If the plaintiff does not receive a judgment in his or her favor or the judgment is insufficient to pay the sanctions, the plaintiff will pay the amount of the deficiency. Sanctions imposed against a defendant will be added to any judgment rendered at trial.

 (D) In determining sanctions, if any, the court shall consider all the facts and circumstances of the case and the intent and purpose of the Program in the State of Hawaii.

Because Wal–Mart is the "non-prevailing" party under HAR Rule 25, we consider only whether the circuit court's decision to impose sanctions in this case constituted an abuse of discretion.

 Under the plain language of HAR Rule 26(D), it is within the discretion of the court whether to award sanctions and if so, for what amount. *Richardson,* 76 Hawai'i at 511, 880 P.2d at 186.

In imposing and determining the amount of sanctions, the court "shall consider all the facts and circumstances of the case and the intent and purpose of the [Court Annexed Arbitration] Program in the State of Hawai'i." *Richardson,* 76 Hawai'i at 509, 880 P.2d at 184 (quoting HAR Rule 26(D)).

 Rule 26 sanctions may be imposed to penalize a non-prevailing party whose decision to pursue a trial *de novo* was unreasonable under the circumstances of the particular case. Their purpose is to discourage unnecessary appeals from the arbitrator's decision. *Moniz v. Freitas,* 79 Hawai'i 495, 498–99, 904 P.2d 509, 512–13 (1995).

 The trial court presided from pretrial matters through the Rule 26 sanction hearing and was very familiar with the facts, circumstances and parties in this case. At the Rule 26 sanctions hearing, the court found Wal–Mart's conduct during the pretrial proceedings unreasonable, even frivolous. The trial court explained its rationale for the imposition of sanctions:

> This action began with the filing of the Complaint on April 18, 1996, and was referred to the arbitration program of the Third Circuit Court in February, 1997. The arbitration was held. And in March, an award was issued in favor of [Gump].
>
> The arbitrator found that Walmart, defendant Walmart, to be 75 percent negligent; KBRL, Inc., 15 percent, and the defendant—or [Gump] 10 percent. The total damages the arbitrator awarded to [Gump] was $25,438.62. Defendant [Wal–Mart's] liability equaled after the reduction of the comparative fault, $19,078.96.

> At trial, the defendant, [Wal–Mart], did not better the award by 30 percent. And thus, [Gump] in this case under [HAR] Rule 26, was the prevailing party. Prior to trial, the Court had a settlement conference. Defendant [Wal–Mart] appeared at the settlement conference and advised the Court that it had zero authority.

> The Court, at that time, made a finding that the zero authority was not productive for settlement negotiations and assessed Wal–Mart attorney's fees in favor of [Gump]. This was pursuant to a finding that the Wal–Mart defendant violated Rule 12 as stated in the Court's order setting trial and pretrial deadlines.

> Prior to trial, again, the Court recommended that the case in total be settled for $12,500. Walmart did not make any offer. [Gump] informed the Court that it would accept the $12,500.

> . . . .

> The Court finds that Walmart, by not even making an offer to settle the case, was unreasonable and their pursuit of a trial de novo was frivolous. The Court finds that the—that Walmart took a chance, and they lost. The Court finds that liability was not highly questionable as the arbitrator's award as well as the jury verdict showed.

The trial court clearly took into account the entire course and circumstance of the litigation, and its sanctions amply fulfilled the purposes of Rule 26. Thus we cannot say that the trial court abused its discretion in imposing Rule 26 sanctions in this case.

 Wal–Mart also argued at the Rule 26 sanction hearing that it has a constitutional right to a jury trial and that Wal–Mart chose to exercise that right in the trial *de novo.*

The Hawai'i Supreme Court in *Richardson* held, however, that Rule 26 serves a legitimate purpose and on its face does not impermissibly burden the civil jury trial right. *Richardson,* 76 Hawai'i at 514, 880 P.2d at 189.

Constitutional limits on Rule 26 sanctions were acknowledged:

> However, although the amount of sanctions authorized by HAR 26 is not per se uncon-

stitutional, "the problem is one of degree rather than kind."

. . . .

Thus, the amount of sanctions imposed in a given case must not be so disproportionate to the amount in controversy so as to operate as a practical denial of the right to a jury trial in civil cases.

*Id.* at 515, 880 P.2d at 190 (internal citations omitted).

In *Richardson,* a sanction of $5,234.41 was not unreasonable involving an amount in controversy between $60,441.80 (the arbitration award—the plaintiffs lost at trial) and $150,000.00 (the amount the plaintiffs demanded).

■ Further, *Richardson* noted that "the sanctioned party's ability to pay sanctions in any type of case may be a relevant factor to consider among the totality of circumstances when determining the amount of sanctions to be imposed." *Id.,* n. 24.

In this case, the amount in controversy was arguably between $25,175.00 (95% of the jury award), and $60,000.00 (the amount demanded by plaintiff for general damages only).

Although no bright lines delineate constitutionally excessive sanctions, we believe that, based on the record, the court's findings, and the financial position of Wal–Mart, the sanctions totaling $14,211.26 did not impermissibly burden Wal–Mart's civil jury trial right. *Richardson, id.* (citing *Christie–Lambert Van & Storage Co. v. McLeod,* 39 Wash.App. 298, 693 P.2d 161 (1984) (appellate court ordered sanction of $3,000.00 in attorneys' fees plus costs against party that had failed in trial *de novo* to improve on the $3045.42 arbitration award entered against him)).

■ We reject Wal–Mart's additional argument that the "reasonably and necessarily incurred" burden of proof in *Tirona v. State*

*Farm Mutual Automobile Ins. Co.,* 821 F.Supp. 632, 636 (D.Haw.1993), applies to Rule 26 sanctions. That case involved attorneys' fees and costs sought by a no-fault insurance benefits claimant under HRS § 431:10C–211(a).

With respect to costs and fees other than attorneys' fees, Rule 26, by its terms, requires only that they be reasonable and actually incurred. And the *Keaulii* court approved a trial court's finding that an amount of attorneys' fees was "reasonable and ... actually incurred," and therefore a proper sanction under Rule 26. *Keaulii,* 74 Haw. at 420, 847 P.2d at 665.

Gump's counsel provided a detailed statement of legal services rendered, time consumed and costs incurred in this case. Gump's counsel requested $20,355.00 in attorneys' fees and $1,413.22 [7] in costs.

Citing "the history of the case, the substance of the case, and the length of the trial[,]" the trial court found that $8,585.00 was a reasonable amount for attorneys' fees and $1,413.22 was a reasonable amount of costs. We see no abuse of discretion in the trial court's approach and result in this respect.

■ We also reject Wal–Mart's complaint that the taxation of jury costs in the amount of $4,213.04 [8] deprived Wal–Mart of its right to due process since the sanction was made without basis or proof that the charges were incurred. Wal–Mart's due process analysis is wholly without merit in this context.

The court detailed the allocation of jury costs on the record, based upon the court's personal knowledge of its own jury costs.

In sum, Wal–Mart has failed to demonstrate any abuse of discretion in the imposition and amount of the Rule 26 sanctions levied against it.

7. The recap of costs submitted with [Gump's] Motion for Rule 26, Hawaii Arbitration Rules, Sanctions Against [Wal–Mart] for Failing to Prevail in the Trial De Novo totalled $1,113.22, however, the total awarded by the court, $1,413.22, reflects a missing bill of $300.00 for Dr. Daso's expert testimony which was added later.

8. The court broke down the total jury costs taxed to Wal–Mart as follows, $3,792.30 for jury selection and juror fees and $420.00 for the cost of juror lodging and meals.

## E.

Wal–Mart also appeals a $175.00 sanction for violation of the August 5, 1997 Pretrial Order. The trial court issued the Pretrial Order pursuant to HCCR Rule 12.1, which states, in pertinent part:

CIVIL SETTLEMENT CONFERENCE; SETTLEMENT CONFERENCE STATEMENT.

(a) Settlement Conference.... A settlement conference in civil cases shall be subject to the following guidelines:

. . . .

(2) *Each party to the action shall attend the conference or be represented by an attorney or other representative who has authority to settle the case.*

. . . .

(6) Sanctions. The failure of a party or his attorney to appear at a scheduled settlement conference, the neglect of a party or his attorney to discuss or attempt to negotiate a settlement prior to the conference, or *the failure of a party to have a person authorized to settle the case present at the conference shall,* unless a good cause for such failure or neglect is shown, be deemed an undue interference with orderly procedures. As sanctions, the court may, in its discretion:

. . . .

(ii) Order a party to pay the opposing party's reasonable expenses and attorneys' fees[.]

(Emphasis added.)

The Pretrial Order explicitly stated that, "[a]ttendance and authority are extremely important, therefore, the parties or attorneys who have complete settlement authority (not authority to settle up to a certain amount) shall be present."

Wal–Mart was forewarned that "[f]ailure to comply with this *shall result in the Court imposing appropriate sanctions.* The court suffers great inconvenience when clients are not readily available." (emphasis added).

At the settlement conference, Wal–Mart's counsel advised the court that he had "zero settlement authority." As a result, the court sanctioned Wal–Mart for violating the Pretrial Order.

Wal–Mart argues the sanction was not justified because it was Wal–Mart's position throughout the case to exercise its right to trial.

Wal–Mart conflates the right to a civil jury trial with a total refusal to even discuss settlement.

A firm intention to go to trial need not preclude earnest settlement discussions. And such discussions can only be fruitful if a party's representative has authority to discuss settlement, no matter how adamantine the party's determination for trial.

Given Wal–Mart's basic misapprehension, we see no abuse of discretion in the HCCR Rule 12.1(a)(6) sanction.

We note further that Wal–Mart was aware of the Pretrial Order well in advance of the conference. Wal–Mart's intention not to offer any money towards settlement, should have been raised with the court before the settlement conference.

In the best case, the court might have convinced Wal–Mart that earnest settlement discussions could be worthwhile. In the worst case, a waste of the parties' time and money might have been avoided.

Wal–Mart has offered no justification for its failure to comply with the Pretrial Order. The sanction imposed was reasonable and justified under the circumstances.

## F.

In post-trial proceedings, Wal–Mart filed a Motion for Judgment Notwithstanding the Verdict or in the Alternative, Motion for New Trial.

Wal–Mart complains that the court erred in denying its motion for JNOV because Wal–Mart had no notice of the two-inch french fry on the floor prior to Gump's fall.

Under our holding approving the mode-of-operation rule, however, there is no requirement to prove actual or constructive notice of the specific dangerous instrumentality, and Wal–Mart's *motion for JNOV was correctly* denied.

Wal–Mart's motion for new trial was based on the exclusion of McDonald's from the special verdict form.

This issue has been addressed and Wal–Mart's contention of error rejected. *Supra,* section III, B. Denial of this motion was proper as well.

### G.

All other points not properly presented but otherwise expressed or implied in Defendant's briefs are without merit.

### V. CONCLUSION

Based on the foregoing, the September 19, 1997 judgment and pretrial orders appealed from are affirmed.